

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Appellate Section*                                                                         *Telephone (202) 514-4081*
*P.O. Box 7415*                                                                          *Facsimile (202) 353-1873*
*Ben Franklin Station*
*Washington, DC 20044*

**VIA CM/ECF**                                                                       March 14, 2023

Molly C. Dwyer
Clerk of the Court
United States Court of Appeals for the Ninth Circuit
95 7th Street
San Francisco, CA 94103

Re:   *Friends of Alaska National Wildlife Refuge, et al. v. Debra Haaland, et al. and King Cove Corporation, et al.*, Nos. 20-35721, 20-35727, 20-35728 (en banc argument held December 13, 2022)

Dear Ms. Dwyer:

      Pursuant to Federal Rule of Appellate Procedure 28(j), this letter advises the Court that on March 14, 2023, the Secretary of the Department of the Interior issued a new decision memorandum (enclosed) withdrawing the Department from the 2019 Land Exchange Agreement between the Secretary of the Interior and King Cove Corporation that is the subject of these appeals.

      The Department of Justice writes to promptly notify the Court of this development while we continue to review the Secretary's decision and consider its effect on this litigation. We intend to inform the Court of the Government's view on the effect of this decision on the pending litigation by Friday, March 17.

                                                                                           Respectfully submitted,

                                                                                             <u>/s Michelle Melton</u>
                                                                                                 Michelle Melton
                                                                         Attorney for the United States

cc:    all counsel of record (via email)

enclosure

*Attachment: Secretary's Withdrawal Memorandum*



THE SECRETARY OF THE INTERIOR
WASHINGTON

# DECISION MEMORANDUM TO WITHDRAW FROM THE 2019 LAND EXCHANGE AGREEMENT BETWEEN THE SECRETARY OF THE INTERIOR AND KING COVE CORPORATION

## Background

On July 3, 2019, Secretary Bernhardt signed a memorandum titled "Findings and Conclusions Concerning a Proposed Land Exchange Between the Secretary of the Interior and King Cove Corporation for Lands Within Izembek National Wildlife Refuge, Alaska." (2019 Secretarial Memorandum). That memorandum laid the foundation for the concurrent approval of a land exchange (2019 Land Exchange) between the Department of the Interior and King Cove Corporation (KCC). The 2019 Secretarial Memorandum stated that the purpose of the 2019 Land Exchange was to allow a road across the Izembek National Wildlife Refuge (Refuge) to improve access by the residents of King Cove to the airport at Cold Bay. The 2019 Land Exchange was made under the Alaska National Interest Lands Conservation Act's (ANILCA) general exchange authority found at 16 U.S.C. § 3192(h). Nevertheless, the 2019 Land Exchange relied in large part on the record developed for an exchange considered and rejected by Secretary Jewell in a 2013 Record of Decision. The 2013 decision was made after completion of an Environmental Impact Statement (EIS) pursuant to the Omnibus Public Lands Act of 2009, Pub. L. No. 111-11, Title VI, Subtitle E, which authorized consideration of a land exchange for the purpose of constructing a single-lane gravel road.

The District Court for the District of Alaska vacated the 2019 Land Exchange less than one year after it became effective. The vacatur order, which remains in effect, was based on several legal defects in the decision, including that Secretary Bernhardt failed to properly justify his change in policy and his rejection of Secretary Jewell's prior conclusions. The District Court did not rule on whether the 2019 decision violated the National Environmental Policy Act (NEPA) or the Endangered Species Act (ESA). Those claims remain unresolved before the District Court. The District Court decision was appealed and fully briefed in the Ninth Circuit Court of Appeals before my confirmation as Interior Secretary. A three-judge panel reversed the District Court's decision, but the panel decision was then vacated pending review by an *en banc* panel. During this time, the Solicitor's Office initiated a review of the 2019 Secretarial Memorandum and the 2019 Land Exchange. That review revealed a procedural flaw regarding the potential impacts on subsistence uses and needs and highlighted significant shortcomings in the record regarding NEPA and ESA analysis. As a consequence of the litigation, the 2019 Land Exchange was in effect for less than eleven months and no land was transferred to KCC.

In addition to and independent of the procedural concerns and the record shortcomings, I have significant policy concerns regarding the manner in which the 2019 Land Exchange was accomplished, as well as the terms of that exchange. The policy concerns include a complete lack of public participation and major differences in the substance of the exchange evaluated in the 2019 Land Exchange compared to the exchange evaluated in the 2013 EIS. For example,

1

while the 2013 exchange included the State of Alaska and committed to add 43,000 acres of state lands and 13,000 KCC acres to the Refuge, the 2019 exchange does not include the State and only involves an equal value of to-be-determined land to be transferred to the Refuge. Because of these procedural and policy concerns, I have decided to withdraw from the 2019 Land Exchange. This decision does not foreclose further consideration of a land exchange to address the community's concerns, although such an exchange would likely be with different terms and conditions.

### The Failure to Consider the Effects of an Exchange on Subsistence Uses is a Procedural Flaw Warranting Withdrawal

Section 810(a) of ANILCA requires that "[i]n determining whether to … permit the … disposition of public lands under any provision of law authorizing such actions, the head of the Federal agency having primary jurisdiction over such lands … shall evaluate the effect of such … disposition on subsistence uses and needs …." 16 U.S.C. § 3120(a). There was no new Section 810 evaluation in advance of the 2019 Land Exchange. Secretary Bernhardt may have relied on the Section 810 evaluation that was completed in 2013, as it was an appendix to the 2013 EIS. But that evaluation lacked analysis of the substantially different elements in the exchange under consideration in 2013 and the exchange signed in 2019, and those differences could amount to significant restrictions on subsistence uses.

Specifically, the 2019 Land Exchange did not prohibit commercial use of the road, did not require barriers to be installed along the road, authorized gravel mining within the Refuge, allowed twice as much land for the road, and would result in far less land coming to the Refuge. Allowing commercial use of the road could result in significant numbers of trucks transporting fisheries products through the Refuge during the summer months. This increase in traffic and noise could, in turn, result in significant disruptions and disturbance to vulnerable populations of wildlife and birds. Similar impacts may arise from the elimination of the roadside barriers previously required to prevent vehicle access to Refuge lands, including Wilderness lands and lands that are important habitat for subsistence resources. Increased access along the road, either directly or by allowing parking off of the road, may be beneficial to subsistence users; however, that same increased access may lead to increased harvest by sport hunters, thereby negatively impacting subsistence harvest of caribou and waterfowl. Further, unlike the 2013 proposed exchange, the 2019 Land Exchange would have relinquished additional acreage along the road corridor to allow for gravel mining within the Refuge. Such mining activity was not contemplated or analyzed in 2013. Finally, pursuant to the 2019 Land Exchange, more land would be conveyed out of federal ownership along the road corridor and therefore not subject to the Title VIII rural subsistence priority, while the amount of land added to the Refuge and subject to the subsistence priority is unknown. Because it would only be in an amount equal in appraised value to the 490 acres being conveyed to KCC, it is likely that it would be substantially less than the over 50,000-acre increase in Refuge lands analyzed in 2013. The collective impacts to subsistence uses resulting from all of these differences have never been properly analyzed. I find that reliance solely on the 2013 Section 810 evaluation without conducting a new subsistence evaluation before executing the 2019 Land Exchange is a procedural deficiency that warrants withdrawal from the 2019 exchange.

## The Failure to Conduct Adequate NEPA and ESA Analysis Supports the Withdrawal

In addition to the Section 810 flaw, I harbor strong concerns that the change in scope in the 2019 Land Exchange from the land exchange considered in the 2013 EIS was not fully addressed in any NEPA analysis. I am aware that Secretary Bernhardt was of the view that pursuant to Section 910 of ANILCA, no EIS is required for the 2019 Land Exchange. Regardless of the correctness of that conclusion as a matter of law, in my policy judgment the 2019 Land Exchange's substantial differences from the 2013 exchange relevant to environmental concerns should have been analyzed and subjected to public comment. The 2013 EIS did not evaluate an exchange and road with the same features as the 2019 Land Exchange. As a matter of policy, I have concluded that some form of additional NEPA analysis should have been undertaken to inform the Secretary and the public about the decision. This would also serve to ensure that the Department's actions would further the conservation and subsistence purposes of ANILCA. The fact that this analysis was not completed supplies an independent basis for withdrawing from the 2019 Land Exchange.

Moreover, I note that the 2019 Land Exchange, despite its potentially greater environmental impacts, was finalized without further review under Section 7 of the ESA for the Steller's eider, southwest Alaska distinct population segment of the northern sea otter, Steller sea lion, and associated critical habitat for each species. In the absence of such review, I cannot be confident in whether the land exchange or associated activities such as road construction, gravel mining and commercial traffic may affect these species or designated critical habitat. As a matter of policy, further review under Section 7 of the ESA should have been undertaken to inform the Secretary about the decision. The absence of this review provides an additional independent basis for withdrawing from the 2019 Land Exchange.

## Policy Reasons for Withdrawing from the 2019 Land Exchange

I have thoroughly considered and reweighed the many competing policy objectives involved in connection with the 2019 Land Exchange based on the record before Secretary Bernhardt. In so doing, I have reached a different policy judgment on this exchange than the one reached by Secretary Bernhardt. In revisiting policy considerations, I rely on the same factual findings as those made by Secretary Bernhardt. As noted above, the 2019 Land Exchange allowed commercial use of the road, did not require barriers to be installed along the road, authorized gravel mining within the Refuge, provided for the transfer to KCC of twice as much land for the road, and would result in far less land coming to the Refuge. Moreover, the lack of public participation in developing the 2019 Land Exchange is a procedural defect that runs counter to my strong belief that important decisions must be made with transparency. In a transaction like this one, public land must not be transferred to a private party without a public process.

I agree with Secretary Bernhardt's conclusion that a road would degrade environmental resources as detailed by Secretary Jewell, but I believe the potential environmental impacts require more review by the agency and comment by the public. I also agree on the premium importance of protecting human life and safety. However, as a policy objective, I also place a high premium on the protection of subsistence resources and uses, and this policy objective does not seem to have played a significant part in Secretary Bernhardt's decision. For purposes of my balancing of considerations, I accepted Secretary Bernhardt's findings that alternative means of transportation between King Cove and Cold Bay are not viable or available, and also assumed that there are high ongoing and future costs to the taxpayers of continuing emergency medical

evacuations from King Cove by the U.S. Coast Guard. I simply do not find that these considerations outweigh the countervailing policy considerations.

I reject the false dichotomy that a decision on this land exchange required a tradeoff between protecting human life and safety and protecting the environment. The substantial changes in the 2019 Land Exchange do not improve human life and safety any more than the proposed exchange and road that Secretary Jewell rejected. Yet those changes do seem to increase the potential for additional significant impacts to conservation and subsistence. As previously discussed, the impacts to conservation and subsistence values were not fully developed in the record, and the lack of public process counsels in favor of my decision to explore a different path. In terms of any reliance concerns, as noted above, the District Court vacated the 2019 Land Exchange after less than eleven months, and no lands ever changed hands.

## Conclusion

I have therefore decided to withdraw from the 2019 Land Exchange based on the legal and policy concerns discussed above. This decision does not foreclose further consideration of a land exchange to address the community's concerns.

Date: March 14, 2023

_____
Secretary of the Interior