EN BANC ARGUMENT HELD DECEMBER 13, 2022
No. 20-35721, No. 20-35727, and No. 20-35728

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, et al.,
Plaintiffs-Appellees,

v.

DEBRA HAALAND, in her official capacity as
Secretary of the U.S, Department of the Department of Interior et al.,
Defendants/Appellants,
and
KING COVE CORPORATION, et al. (KCC)
Intervenor-Defendants/Appellants,
and
STATE OF ALASKA,
Intervenor-Defendant/Appellants.

_____

Appeal from the United States District court, District of Alaska,  Anchorage
Honorable John W. Sedwick Case No. 3:19-cv-00216

_____

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3(a)

## (RELIEF REQUESTED BY APRIL 28, 2023)

_____

Steven W. Silver                                  James F. Clark
Alaska Bar No. 7606089                   Alaska Bar No. 6907025
Silver Legal Services, LLC               Law Offices of James F. Clark
2104 Polo Pointe Dr.                        1109 C Street
Vienna, VA 20191                            Juneau, Alaska 99801
703. 587-7792(cell)                          907.586.0122 (office)
Ssilver628@aol.com                         907.586.1035 (fax)
ssilver628@aol.com                          jfclarkiii@gmail.com

Attorneys for King Cove Corporation. et al. Intervenor Defendants-Appellants

## CIRCUIT RULE 27-3 CERTIFICATION

I, Steven Silver, certify the following facts to be true, pursuant to Circuit.

Rule 27-3(a):

1. I am an attorney for Defendant-Appellants King Cove Corporation (hereinafter KCC), a Village corporation organized pursuant to the Alaska Native Claims Settlement Act (ANSCA). I have personal knowledge of the matters stated herein and, if called as a witness, could competently testify thereto. I submit this declaration in support KCCs' Emergency Motion Under Circuit Rule 27-3 for a Stay Pending Appeal.

2. Following are the telephone numbers, e-mail addresses, and office addresses of the parties' attorneys:

Steven Silver
Silver Legal Services LLC
2104 Polo Pointe Dr.
Vienna, VA 22181
703-587-7792
Ssilver628@a0l.com

James F Clark
Law Offices of Jars Clark
1109 C St,
Juneau, AK 99801
907-586-0122
jfclarkiii@gmail.com
Attorneys for King Cove Corporation. et al. Intervenor Defendants-Appellants

Assistant Attorney General
Robert Landmen
Michelle Melton

Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044 (202) 532-3251
michelle.melton@usdoj.gov
Attorneys for Defendants/Appellants,

Sean Lynch
Assistant Attorney General
State of Alaska
Department of Law
123 4th St.
Juneau, Alaska  99801
(907) 465-6712
sean.lynch@alaska.gov
Attorney for Intervenor-Defendant/Appellants.  State of Alaska

Bridgette Sarnies
Brook Brisson
Senior Staff Attorneys
Trustees for Alaska
121 W Fireweed Lane, Ste. 105
Anchorage, AK 99503
(907) 433-2011
bpsarianos@trustees.org
bbrisson@feusrees.org
Attorneys for Plaintiffs/Appellees

3. KCC respectfully requests an emergency injunction to Stay any and all activities by Defendants-Appellants Department of Interior (hereinafter DOI) to implement its March 14, 2023, Memorandum of Decision, pending a final order on KCC's adjudication (opposing the withdrawal) from this Court or a final order from the district court on remand. Unless the requested Stay is granted, and this Court adjudicated the withdrawal issue first,  KCC could be deprived of the Land Exchange

without the opportunity to oppose and adjudicate DOI's illegal "withdrawal" in Court.

4. KCC is moving for Relief in this Court pursuant to Federal Rule of Appellate Procedure 8 (a)(2)(A)(1) because "moving first in district court would be impractical."

(a) KCC had no advance consultation with, or notice from, DOI that it intended to switch from defending the 2019 Land Exchange Agreement (which it had done from 2019) until DOI's day it "withdrew" from it on March 14, 2021.

(b) On March 17, 2023, DOI filed a Motion to Dismiss with this panel claiming that its putative March 14, 2023, "withdrawal" from the Exchange Agreement with KCC caused Friends' case against DOI to become moot. But for the withdrawal DOI would have no grounds to move for dismissal of Friends' case against it.

(c) Friends have no reason to oppose DOI's Motion to Dismiss. So, KCC could lose the Land Exchange without having the opportunity to oppose the withdrawal unless this Stay is granted and KCC's opposition to the withdrawal is heard by this panel or on remand to this district court before a decision on DOI's Motion to Dismiss is made.

(d) The record supporting the KCC's and DOI's appeal of the 2019 Land Exchange Agreement, to first a three-judge panel and then to this panel, has been in

the Ninth Circuit Court since November 2020. It would take time to return the record to a new judge[1] in the Alaska district court. By then a decision on DOI's Motion to Dismiss would likely have been made.

(e) KCC's Opposition to the Motion to Dismiss is due on April 26, 2023. If a Stay of DOI's March 14, 2023, Memorandum of Decision withdrawing from a 2019 Land Exchange Agreement between KCC and DOI is not immediately granted by this Court, DOI's Motion to Dismiss, now before this panel, could be decided by this Court before KCC could file a new Complaint or Cross-claim demanding a full administrative record of DOI's recent action upon which to seek permanent injunctive relief in the district court.

5. On March 24, 2023, KCC telephonically notified all counsel of record of KCC's intent to file an emergency injunction for a Stay with this Court. DOI and Plaintiffs/Appellants state that they oppose the Stay. Defendant-Intervenors State of Alaska stated that they support the Stay.

6. KCC is thus compelled to seek emergency relief in this case.

7. On April 25, 2023, I notified the Ninth Circuit Court staff via e-mail of KCC's intent to file an emergency injunction for a Stay pending a final order on KCC's adjudication (opposing DOI's withdrawal) from this Court or a final order from the district court on remand.

---

[1] Judge Sedwick has completely retired and no longer hears cases.

8. On April 25, 2023, I  served all counsel of record a complete copy of this motion via ECF or e-mail.

I declare under penalty of perjury that the foregoing is true.

s/ Steven Silver                   Dated: April 25, 2023
AK Bar No. 7606089
Silver Legal Services
2104 Polo Pointe Dr.
Vienna, VA 22181
(703) 587-7792
Ssilver628@aol.com
Attorney for Appellant
King Cove Corporation, et. al

Case: 20-35721, 03/21/2023, ID: 12679029,

## CORPORATE DISCLOSURE STATEMENT
### Case: 20-35721, 03/21/2023, ID: 12679029.

Pursuant to Federal Rule of Appellate Procedure 26.1, I Steven Silver state the following:

1.     King Cove Corporation is a Native Alaskan corporation organized under the laws of the State of Alaska and offers no shares for sale to the public. It has no parent corporation.

2.     Agdaagux Tribe of King Cove and the Native Village of Belkofski are tribal entities recognized by the Department of Interior.

<u>s/ Steven Silver</u>                          Dated: April 25, 2023
AK Bar No. 7606089
Silver Legal Services
2104 Polo Pointe Dr.
Vienna, VA 22181
(703) 587-7792
Ssilver628@aol.com
Attorney for Appellant
King Cove Corporation, et al.

## TABLE OF CONTENTS

CIRCUIT RULE 27-3 CERTIFICATION ........................................................ i

CORPORATE DISCLOSURE STATEMENT ................................................v

TABLE OF CONTENTS .................................................................................vi

TABLE OF AUTHORITIES ......................................................................, viii

TABLE OF EXHIBITS ..............................................................................???.

INTRODUCTION………………………………………………………..1

BACKGROUND………...…………………………………………………1

FACTS……………………...…………………………………………2

LEGAL STANDARD………………………………………………………5

ARGUMENT……,,,,,,……………………………………………………6

    I.     KCC WILL SUFFER IRREPARABLE HARM
            WITHOUT A STAY OF DOI'S MOTION TO
            DISMISS…………………………………………..………..……….…6

    II.    KCC WILL PREVAIL ON THE MERITS BECAUSE
           DOI'S PURPORTED "WITHDRAWAL" OF THE 2019
           LAND EXCHANGE AGREEMENT VIOLATES THE
           ADMINISTRATIVE PROCEDURES ACT…………..……….…8

           A. Introduction…………………………………………………8

           B.  This Court's Decision in *Muckleshoot Indian Tribe*
              *v. U.S. Forest Service,* 177 F.3d 800 (9th Cir. 1999)
              Demonstrates that DOI Has a Heavy Burden to Prove
              This Case Is Moot,  Particularly If KCC Is Permitted
              to Litigate Its Opposition to the Withdrawal  Prior to a
              Decision Being Made on DOI's Motion to Dismiss………………8

    C. KCC Is Likely to Prevail on the Merits Because DOI's
      Purported "Withdrawal" Violated the Administrative
      Procedures Act in Multiple Ways………………………….……10

  1. The Secretary Withdrew from the 2019 Land Exchange
     Agreement Claiming Adverse Impacts from "Road
     Construction." This Reason for Withdrawal Violates the
     APA Because It Runs Counter to the Fact that the 2019
     Land Exchange Agreement did not Authorize Road
     Construction……………………………………………….……..10

  2. The Secretary's Withdrawal from the 2019 Land Exchange
     Agreement Violates the APA Because It Violated DOI's
     Procedures for Consultation with ANCSA Corporation
     and Government to Government Consultation with Alaska
     Native Tribes………………………………………….…………12

III.    THE BALANCE OF EQUITIES STRONGLY FAVORS
      AN INJUNCTION……………………………………………………15

IV.    GRANTING KCC'S STAY REQUEST IS IN
      THE PUBLIC INTEREST…………………………………………17

CONCLUSION .................................................................................18

CERTIFICATE OF COMPLIANCE ................................................20

ATTACHMENT: TRUMBLE DECLARATION………………………..21

# TABLE OF AUTHORITIES

## CASES

*Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499,
   98 L.Ed. 681 (1954), …………………………………………...14

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127, 1131 (9th Cir. 2011)…………………...………………..6

*Chafin v. Chafin*,
   568 U.S. 165, 172 (2013)…………………………………..…………..8

*Church of Scientology of Cal.*,
   920 F.2d 1487 (9TH Cir.1999…………….…………………..……..14

*County of Los Angeles v. Leavitt*,
   521 F.3d 1073, 1078 (9th Cir. 2008)…………………………..……12

*County of Yakima v. Confederated Tribes and*
   *Bands of Yakima Indian Nation*, 502 U.S. 251, 269,
   112 S.Ct. 683, 116 L.Ed.2d 687 (1992)…...………………….……...9

*Ctr. for Biological Diversity v. Zinke*,
   900 F.3d 1053, 1067 (9th Cir. 2018)………………………..…….1

*F.D.I.C. v. O'Melveny Myers*,
   61 F.3d 17, 19 (9th Cir…………………………………….…15

*Feldman v. Ariz. Sec'y of State's Office*,
   843 F.3d 366, 367 (9th Cir. 2016)………………………………..5

*FCC v. Fox Televisions, Inc.*,
   556 U.S. 502, 515(2009)……………………………………..…12

*Friends of the Wild Swan v. Weber*,
   767 F.3d 936, 942 (9th Cir.2014)……...…………………………6

*Greater Yellowstone Coal., Inc. v. Servheen*,
    665 F.3d 1015, 1023  (9th Cir. 2011)………………………….……….12

*In Alcaraz v. I.N.S.,*
    384 F.3d 1150, 1162.( 9TH Cir 2004)………………………….….…....14

*In Teton Historic Aviation Found. v. United States*,
    248 F.Supp.3d 104, 111 (D.D.C.2017)…………………………………14

*Landis v. N. Am. Co.,*
    299 U.S. 248, 254-55 (1936)………………………………………...18

*Mission Prod. Holdings, Inc. v. Tempnology, LLC,*
    139 S. Ct. 1652, 1660 (2019). …………………………………......….9

Morton v. Ruiz,
    415 U.S. 199 (1974)……………………………………………………14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.*
    *State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)…………..…….10

*Muckleshoot Indian Tribe v. U.S. Forest Service,*
    177 F.3d 800 (9th Cir. 1999) …………………………………………8.9

*Organized Village of Kake v. U.S. Dep't. of Agric*.,
    795 F.3d 956, 968-969 (9th ..Cir. 2015) …………………..…….…..…11

*Romeiro de Silva v. Smith,*
    773 F.2d 1021, 1025 (9th Cir. 1985)……………………………………...14

*Winter v. Nat. Res. Defense Council,*
    555 U.S. 7, 20 (2008)……………………………………..…….5,6.12

**STATUTES**

Administrative Procedure Act (5 U.S, C 706(2)…………...3,6,8.10.11,12,14,15,17

Endangered Species Act (16 U.S. C. ……………………………….………..,3,8

Alaska National Interest Lands Conservation Act (ANILCA), ……...…….2,3,8,18

Alaska Native Claims Settlement Act 43 U.S.C. ………………………...…2.3,13,18

National Environment Policy Act 42 U.SC. ……………………………...……...11

**TREATISES**

Wilkinson. Charles. *American Indians, Time and the Law*: Alaska Law Review 37 at 39 (1999)……………………………………..18

## INTRODUCTION

Immediate injunctive relief in the form of a Stay is necessary to avoid imminent, irreparable harm to Defendant-Appellants King Cove Corporation (hereinafter "KCC"), the residents of King Cove, and the members of the Agdaagux and Belkofski Tribes. KCC requests a Stay of any and all activities by Defendants-Appellants Department of Interior's (hereinafter "DOI") to implement its March 14, 2023, Memorandum of Decision withdrawing from its 2019 Land Exchange Agreement with KCC pending a final order from this Court or a final order from the district court on remand deciding KCC's adjudication opposing the withdrawal.

On March 17, 2023, DOI filed a motion with this panel to dismiss Plaintiffs-Appellees (hereinafter "Friends") litigation against DOI claiming that because it had withdrawn from a July 12, 2019, Land Exchange Agreement (hereinafter "Exchange Agreement") with KCC on March 14, 2023, Friends' litigation currently before this panel against DOI is moot.

But for its assertion of "withdrawal" DOI would have no grounds to move for dismissal. Friends have no reason to oppose DOI's Motion to Dismiss. So, unless the requested Stay is granted, and KCC's opposition to the withdrawal is adjudicated by this panel or on remand to this district court, KCC will lose the benefits of a lawfully executed and partially implemented Exchange Agreement without having

had the opportunity to oppose DOI's unlawful and unilateral withdrawal before a Court.

## BACKGROUND

Then Secretary Bernhardt's July 3, 2019, Decision Document (pages 3 – 12) (AR 002816 - 002825) fully explains the background of this matter and is hereby incorporated by reference.

## FACTS

On July 3, 2019, then Secretary of Interior David Bernhardt signed an equal-value Land Exchange Agreement with KCC in accordance with ANILCA § 1302 (h) which became effective when executed by KCC on July 12, 2019. Each party made promises of performance to the other, undertook mutual obligations, and "agree[d] to be bound thereby."[2]

It was a land exchange agreement and nothing more. It specifically did not include authorization to construct a road:

> A land exchange, like the one contemplated here, will allow KCC to obtain land holdings that align with the needs of the King Cove community to potentially pursue the construction of a road at some point in time. Should KCC decide at a later date to pursue the construction of a road connection between Cold Bay and King Cove, it will need to comply with all permitting actions and environmental reviews required by both Federal and State law. ***Nevertheless, as noted above, any decision by KCC to pursue a road***

---

[2] Paragraph A of the July 12, 2019, Land Exchange Agreement at page 4.

*connection is separate and distinct from the land exchange authorized here*.[3] (Emphasis added).

Friends challenged the lawfulness of the 2019 Agreement under ANILCA, the National Environmental Policy Act ("NEPA), and the Endangered Species Act ("ESA"). On June 1, 2020, the Alaska district court vacated the Agreement on three grounds:

1. The district court concluded that DOI violated the APA because it did not adequately explain its change in position from former Secretary Jewell's 2013 decision as required by *FCC v. Fox Television Stations, Inc*., 556 U.S. 502 (2009).

2. The district court concluded that the land exchange did not further the purposes of ANILCA.

3. The district court concluded that the land exchange authorized a transportation corridor without complying with the procedural requirements of Title XI of ANILCA.

Given these holdings, the district court found it unnecessary to reach Appellees' NEPA or ESA claims.

DOI, KCC, and Alaska appealed to a three-judge panel of this Court which reversed the district court on March 16, 2022, and remanded Friends' NEPA and ESA claims to the district court.[4]

---

[3] July 12, 2019, Land Exchange Decision at page 16.
[4] 29 F. 4th 432 (9th Cir. 2022).

On April 29, 2022, Friends petitioned this Court for an *en banc* rehearing. DOI, KCC, and Alaska were directed to file responses to the petition for rehearing *en banc* on May 16, 2022, which they did on August 5, 2022.

On November 10, 2022, the Ninth Circuit ordered an *en banc* hearing and vacated the three-judge panel opinion that had overturned the district court opinion.[5] Oral argument before the *en banc* panel was held on December 13, 2022.

Before a decision by the Ninth Circuit *en banc* panel was published, the Secretary of Interior issued a Decision Memorandum on March 14, 2023, that abruptly and unilaterally withdrew DOI from the 2019 Land Exchange Agreement with KCC without government-to-government consultation or any prior notice. (Trumble Declaration ¶ 8A.).

On March 16, 2023, the Agdaagux and Belkofski Tribes requested that DOI suspend the filing of DOI's Motion to Dismiss (announced to KCC and the Tribes on March 14, 2023) until government-to-government consultation could occur. (Trumble Declaration ¶ 10.). Instead, on March 17, 2023, DOI filed a Motion to Dismiss, asserting that the case is moot because Interior had "withdrawn" from the 2019 Land Exchange Agreement. The Tribes' request for prior consultation was not

---

[5] 54 F. 4th 608 (9th Cir. 2022).

answered and there was no prior Government-to-Government consultation. (Trumble Declaration ¶ 11.).

The agreed upon land exchange contains five substantive steps prior to the Parties' exchange of deeds, the following two of which have been completed and KCC money has spent a significant amount of money on them in reliance upon the Exchange Agreement and DOI's legal support for it during all phases of Friends' litigation:

1. Detailed legal property descriptions of each Party's selected exchange lands. (Prepared).
2. Appraisal of land values prepared in 2020 for the land selected for exchange by each Party. (Trumble Declaration ¶ 18.).

Because KCC and the State had been surprised by DOI's Motion to Dismiss they requested a 30-day extension to which DOI to which the *en banc* panel of this Court agreed.

## LEGAL STANDARD

The standard for an injunction pending appeal is the same as for a preliminary injunction. *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016) (*en banc*). Plaintiffs must establish: (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Nat.*

*Res. Defense Council* (Winter), 555 U.S. 7, 20 (2008). Plaintiffs can obtain an injunction by showing "serious questions going to the merits … and the balance of hardships tips sharply in [their] favor" provided the other factors are met. *Alliance for the Wild Rockies v. Cottrell* (Alliance), 632 F.3d 1127, 1131 (9th Cir. 2011). The showing for serious questions is a lower bar than demonstrating likely success on the merits. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014). The Court reviews the merits under the Administrative Procedure Act. 5 U.S.C. § 706(2).

## ARGUMENT

### I.  KCC WILL SUFFER IRREPARABLE HARM WITHOUT A STAY OF DOI'S MOTION TO DISMISS.

DOI's Motion to Dismiss is cleverly postured. DOI contends that Friends' case against DOI is moot because DOI has withdrawn from the Land Exchange with KCC. (DOI's approval of the Exchange Agreement was the subject of Friends' Complaint). Friends have no reason to contest the Motion to Dismiss, because a vacation of the Land Exchange is a windfall gift of exactly what Friends' Complaint had sought.

Unless DOI's Motion is Stayed pending adjudication of KCC's argument that DOI's "withdrawal" from the Land Exchange violated the APA (thereby leaving the Land Exchange in effect along with Friends' litigation against DOI), Friends' case

against DOI would be dismissed as moot. KCC would thus lose its opportunity to oppose the underlying merits of the lawfulness of DOI's unilateral withdrawal, on a complete administrative record of DOI's recent action before this panel or on remand to the district court. (Trumble Declaration ¶ 19).

KCC would also lose the benefit of a bargained for and fully executed Exchange Agreement after years of pursuing it along with the opportunity to "decide at a later date to pursue the construction of a road connection between Cold Bay and King Cove." As former Secretary of Interior David Bernhardt said: "A land exchange, like the one contemplated here, will allow KCC to obtain land holdings that align with the needs of the King Cove community to potentially pursue the construction of a road at some point in time."[6] (Trumble Declaration ¶ 19).

These losses will irreparably harm KCC because there is no reason to believe that DOI will renew it. (DOI Motion at 14-15). Alternatively, KCC will have to re-litigate the same 2019 land Exchange Agreement and all contested issues by filing a new action challenging DOI's withdrawal, which would be opposed by DOI and Friends, without the benefit of this Court's resolution of contested issues before it. Requiring KCC to recommence and fully re-litigate all contested issues in this matter serves no public purpose whatsoever.

---

[6] July 12, 2019, Land Exchange Decision at page 16.

## II. KCC WILL PREVAIL ON THE MERITS BECAUSE DOI'S PURPORTED "WITHDRAWAL" OF THE 2019 LAND EXCHANGE AGREEMENT VIOLATES THE ADMINISTRATIVE PROCEDURES ACT.

A. Introduction.

DOI admits that a land exchange agreement exists with King Cove Corporation.[7] DOI has also admitted that the Exchange Agreement complies with the law.[8]

Except for the ascending level of appeals, nothing in DOI's steadfast defense of the Exchange Agreement and its legality had changed from early 2020 until the Secretary's March 14, 2023, Decision Memorandum and DOJ's March 17, 2023, Motion to Dismiss. This panel should consider DOI's prior briefing as evidence that KCC will prevail on the merits

B. This Court's Decision in *Muckleshoot Indian Tribe v. U.S. Forest Service*, 177 F.3d 800 (9th Cir. 1999)  Demonstrates that DOI Has a Heavy Burden to Prove That This Case Is Moot, Particularly If KCC Is

---

[7] "This dispute stems from the Department of the Interior's renewed effort to enter into a land exchange agreement with King Cove Corporation ("KCC"), an Alaska Native village corporation, pursuant to the authority set forth in section 1302(h) of the Alaska National Interest Lands Conservation Act ("ANILCA")." Federal Defendants' Response to Plaintiffs' Motion for Summary Judgment Case 3:19-cv-00216-JWS-Document 38 Filed 3-3-20 at Page 9.

[8] "Two Secretaries of the Interior have properly concluded that such an agreement serves both the best interests of the people of Alaska and the purposes of ANILCA, while at the same time complying with relevant federal laws, including ANILCA, the National Environmental Policy Act ("NEPA"), and the Endangered Species Act ("ESA")." Federal Defendants' Response to Plaintiffs' Motion for Summary Judgment Case 3:19-cv-00216-JWS - Document 38 Filed 3-3-20 at Page 9.

> Permitted to Litigate Its Opposition to the Withdrawal Prior to a Decision Being Made on DOI's Motion to Dismiss.

In *Muckleshoot* Weyerhaeuser contended that a Tribe's appeal to the Ninth Circuit on NEPA grounds was moot because Weyerhaeuser and the Forest Service had executed a land exchange, Weyerhaeuser had assumed the obligation to manage the land it received, Weyerhaeuser had obtained state permits to harvest timber from that land, and Weyerhaeuser had harvested 10% of that land. After pointing out "its reluctance to invoke the doctrine of mootness" the Court denied Weyerhaeuser's mootness defense because "[c]onveyance of property to another does not moot a case" and "[w]here the actions in a title transfer can be undone this court will not find meritorious the defense of mootness." *Muckleshoot* at 815.

The same concept applies here. DOI's self-proclaimed "withdrawal" from the land exchange with KCC does not moot Friends' case against DOI because DOI's withdrawal can be undone if a court finds that DOI's "withdrawal" violated the APA.

The Supreme Court has also cautioned against reflexive findings of mootness, holding that a case is moot only if "it is impossible for a court to grant any effectual relief whatever," a "demanding standard" that courts must apply critically. *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 139 S.Ct. 1652, 1660 (2019). Indeed, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin,* 568 U.S. 165, 172 (2013).

Because KCC is a party to this case and has a concrete interest in DOI's purported "withdrawal" from the Exchange Agreement on which DOI is relying to support its claim that Friends' litigation is moot, and because KCC can show that DOI violated the APA in "withdrawing" from the Agreement, the case is not moot.

### C. KCC Is Likely to Prevail on the Merits Because DOI's Purported "Withdrawal" Violated the Administrative Procedures Act in Multiple Ways.

1. The Secretary Withdrew from the 2019 Land Exchange Claiming Adverse Impacts from "Road Construction." This Reason for Withdrawal Violates the APA Because It Runs Counter to the Fact that the 2019 Land Exchange did not Authorize Road Construction.

The Supreme Court has instructed that an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

Contrary to the facts, most importantly Secretary Bernhardt's multiple statements in his 2019 Decision that the 2019 Land Exchange Agreement did not authorize a road, Secretary Haaland's March 14, 2023, decision to withdraw is totally dependent upon the adverse impacts from road construction she claimed as follows:

a. Secretary Bernhardt did not consider the potentially significant restrictions on subsistence uses: a) from the failure of the 2019

Land Exchange Agreement to prohibit commercial use of the road, or to require barriers to be installed along the road; b) from allowing gravel mining for the road within the Refuge; c) from allowing twice as much land for the road as the 2013 proposal considered by Secretary Jewell; and d). from requiring less land coming to the Refuge than the 2013 proposal considered by Secretary Jewell.

b.  The failure to evaluate the 2019 Agreement pursuant to NEPA. Regardless of whether further NEPA analysis was necessary as a matter of law, the changes between the potential land exchange considered in 2013 by Secretary Jewell  and the land exchange authorized by the 2019 Land Exchange Agreement  warranted further NEPA analysis and public comment as a matter of policy.

c.   Secretary Haaland reweighed the many competing policy objectives involved with the 2019 Agreement based on the record before Secretary Bernhardt and reached a different policy judgment. For example, the Secretary placed a different weight on protection of subsistence resources than he had done. (Motion to Dismiss at Pages 2 – 3).

Not only do these reasons violate the APA because they are totally contrary to the evidence, DOI *has known and has argued to this Court* until March 14, 2023, that they are totally contrary to the evidence.

For example, in its March 3, 2020, Opening Brief to the three-judge panel of this Court DOI contradicted the reasons now given by DOI for "withdrawal"  (i.e., alleged adverse impacts from road construction) by asserting that such reasons  "run counter to the facts:"

Plaintiffs' claims largely relate to the use of the land for a prospective road that may or may not be built. Any such road will have to comply with all applicable federal and state laws and regulations before it could be built, and

Plaintiffs' concerns about the existence of a road should be addressed at that time.[9]

Under *FCC v. Fox Televisions, Inc.*, 556 U.S. 502, 515 (2009) and *Organized Village of Kake v. U.S. Dep't. of Agric.,*795 F.3d 956, 968-969 (9th Cir. 2015) DOI must provide a reasoned explanation for its change of position.[10] The explanation in its Decision Memorandum violates the APA because it "is a direct, and entirely unexplained, contradiction of the facts" as DOI described to this Court as quoted above.

Accordingly, DOI's March 14, 2023, decision to withdraw must be set aside because "it offered an explanation for its decision that runs counter to the evidence" and thus violates the APA 5 U.S.C. § 706(2). *County of Los Angeles v. Leavitt,* 521 F.3d 1073, 1078 (9th Cir. 2008). *See also, Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) (quoting *Greater Yellowstone Coal., Inc. v. Servheen,* 665 F.3d 1015, 1023 (9th Cir. 2011)).

    2.  The Secretary's Withdrawal from the 2019 Land Exchange Violates the APA Because It Violated DOI's Procedures for

---

[9] Federal Defendants' Response to Plaintiffs' Motion for Summary Judgment. Case 3:19-cv-00216-JWS - Document 38 Filed 3-3-20 at Page 4.

[10] The foregoing APA requirement for a reasoned explanation for DOI's change of position also requires an explanation for the abrupt change without notice or consultation. For example, was it meant to mollify environmental groups after DOI announced on March 13, 2023, the day before the 2019 Land Exchange Agreement withdrawal, that DOI would allow the controversial Willow oil development project on Alaska's North Slope to proceed?

Consultation with ANCSA Corporation and Government to
Government Consultation with Alaska Native Tribes.

DOI's consultation policy with ANCSA Corporation and Government to

Government Consultation with Alaska Native Tribes   is set out in Chapter 6.4 Part

512 of its Departmental Manual:

> 6.4 **Policy.** It is the policy of the Department to recognize and fulfill its
> legal obligations to consult with Alaska Native Corporations on the same
> basis as Indian Tribes under Executive Order 13175. All bureaus and
> offices shall make good-faith efforts to invite ANCSA Corporations to
> consult early in the planning process and throughout the decision-making
> process and engage in robust, interactive, pre-decisional, informative, and
> transparent consultation when planning actions with ANCSA Corporation
> implications (see 512 DM 7 for consultation process). It is the policy of
> DOI to seek consensus throughout the consultation process.

DOI's "withdrawal" from the Exchange clearly had   ANCSA Corporation

implications. Accordingly, this policy on its face required DOI to provide good faith

notice and pre-decisional consultation seeking consensus with KCC and the Tribes

before deciding to withdraw. For example, Paragraph P. 2 of the   Exchange

Agreement provides an amendment process. DOI could have sought changes to the

Agreement through pre-decisional consultation.

This policy was clearly not followed here. The Secretary gave KCC and the

Agdaagux and Belkofski Tribes same-day notice of DOI's decision to withdraw from

the Exchange Agreement and that DOI had  switched sides. The Tribes request for

consultation sent to the Secretary the day before DOI filed its Motion to Dismiss was

not answered. (Trumble Declaration at ¶¶ 10 – 11).

DOI's abrupt withdrawal was in total disregard of its own above-stated policy and disrespected KCC and the Tribes. Given the Exchange's contractual nature, it was also a flagrant violation of the Exchange's implied duty of good faith and fair dealing. As such it violates the APA.

In *Morton v. Ruiz*, 415 U.S. 199 (1974) the Bureau of Indian Affairs discontinued benefits to Indians living near reservations without formally publishing eligibility requirements, as provided for in a Bureau manual. Off-reservation Indians sued under federal Indian law statutes. The Supreme Court held that the agency's action violated both agency procedures and the government's duty to deal fairly with Indians, and therefore the action would not be granted deference.[11]

In *Teton Historic Aviation Found. v. United States*, 248 F.Supp.3d 104, 111 (D.D.C. 2017) the Court stated: "[I]t is settled law that where an internal agency manual affects the concrete interest of a member of the public, the Court can, and

---

[11]  In *Alcaraz v. I.N.S.,* 384 F.3d 1150, 1162 (9th Cir. 2004) this Court observed:

> Although the doctrine has its clearest origin in United States ex rel. *Accardi v. Shaughnessy*,347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), which dealt with published regulations, courts have recognized that the so-called *Accardi* doctrine extends beyond formal regulations. See e.g., *Church of Scientology of Cal.*,920 F.2d at 1487 ("Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures."); *Romeiro de Silva v. Smith*,773 F.2d 1021, 1025 (9th Cir. 1985) (noting that the INS can be bound by its "Operations Instructions").

should, require the agency to follow its own procedures by applying the manual itself as a judicially manageable standard."

Accordingly, the Secretary's putative "withdrawal" must be set aside for violating the APA because it was done in violation of DOI policy set out in Chapter 6.4 Part 512 of the Departmental Manual.

### D. Conclusion.

For the foregoing reasons KCC is likely to prevail on the merits.

## III. THE BALANCE OF EQUITIES STRONGLY FAVORS AN INJUNCTION.

This criterion requires the Court to decide whether KCC would be harmed more if an injunction is NOT granted than DOI and Friends would be if it was.

Unless the requested Stay is granted and KCC is afforded the time to oppose and adjudicate the withdrawal by this panel or on remand to the district court before this Court takes up the Motion to Dismiss, DOI's Motion to Dismiss Friends' action against it could be dismissed as moot. As a result, KCC could lose the Exchange Agreement without having had the opportunity to oppose the withdrawal before a Court, even though KCC is likely to prevail on the merits. This would be highly inequitable. While made in a much different case than the one at bar this Court's observation in *F.D.I.C. v. O'Melveny Myers*, 61 F.3d 17, 19 (9th Cir. 1995) is particularly apt here: "Moreover, when a party is denied a defense under such

circumstances, the opposing party enjoys a windfall. This is justifiable as against the wrongdoer himself, not against the wrongdoer's innocent creditors."

Loss of the Exchange Agreement will constitute irreparable injury to KCC and its residents because, as former Secretary of Interior David Bernhardt put it: "A land exchange, like the one contemplated here, will allow KCC to obtain land holdings that align with the needs of the King Cove community to potentially pursue the construction of a road at some point in time." (Trumble Declaration ¶ 19.).

In addition, KCC will lose the money spent to do the work to execute Exchange Agreement requirements in reliance upon DOI's support for the Exchange Agreement and in opposing Friends' litigation. (Trumble Declaration ¶ 19.).

These losses will also irreparably harm KCC because there is no reason to believe that DOI will renew the Exchange Agreement. (DOI Motion at 14-15). Furthermore, if the requested Stay is not granted KCC will have to re-litigate the same 2019 land Exchange Agreement and all contested issues by filing a new action challenging DOI's withdrawal. Such a new action would be opposed by DOI and Friends, without the benefit of this Court's resolution of contested issues before it. Requiring KCC to recommence and fully re-litigate all contested issues in this matter serves no public purpose whatsoever and would be at the expense of economic use of judicial resources.

On the other hand, the only impact that granting the requested injunction would have on DOI and Friends is a delay in obtaining a decision on DOI's Motion to Dismiss Friends' case against it while the withdrawal issue is adjudicated. DOI has presented no justification for switching sides to posture itself to moot its litigation with Friends by withdrawing from the Exchange Agreement or its timing for doing so.

However, because DOI supported the Land Exchange until March 17, 2023, it is very difficult to see any injury to it by maintaining the *status quo* while KCC is given time to litigate the APA violations committed by DOI in its "withdrawal". Put another way, all DOI would lose is the opportunity for a decision to be reached on its Motion to Dismiss without providing KCC an opportunity to adjudicate the withdrawal upon which DOI's assertion of mootness depends.

Friends only loss from granting KCC's Motion is a delay in receiving the benefits of the windfall it has realized from DOI's switch to its side of the case while KCC's Opposition is litigated.

## IV. GRANTING KCC'S STAY REQUEST IS IN THE PUBLIC INTEREST.

Granting KCC's Stay request would put teeth into DOI's consultation process with Alaska Natives, particularly where DOI so egregiously abused it in this case by providing only same-day notice of denouncing its Land Exchange Agreement with KCC. Then Secretary Bernhardt had it right when he pointed out at pages 18-19 of

his July 12, 2019, Decision Document approving the Exchange Agreement: "[R]esponsibility to the Alaska Native people in the implementation of ANCSA and ANILCA requires a different policy result for the ANILCA land exchange." When there is an ambiguity regarding the application of ANCSA and ANILCA§1302 (h) to the land transferred to Native Corporations it should be resolved in favor of an interpretation that allows such land exchanges to work for the Native Corporations. *County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation*, 502 U.S. 251, 269, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992).[12]

A Stay in this case would also serve the public interest of conserving judicial resources by allowing this Court adequate time to consider KCC's Opposition to DOI's Motion to Dismiss its case against Friends in an orderly fashion. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

**CONCLUSION**

For the foregoing reasons KCC respectfully urges the Court to grant KCC's emergency injunction to Stay any and all activities by DOI to implement its March

---

[12] In a similar vein Charles Wilkinson observed:
If Indians are involved, you should infuse **all federal laws, old and new**, with the policy of the special Indian trust relationship and read those laws with a heavy bias in favor of Indian and tribal prerogatives. If the first reading does not produce a result in favor of the Indians, you should read the document again. And once again – with an inventive mind. CHARLES F. WILKINSON, AMERICAN INDIANS, TIME, AND THE LAW 52 (1987). (emphasis added) quoted from Alaska Law Review 37 at 39, 1999.

14, 2023, Memorandum of Decision, pending a final order on KCC's adjudication (opposing DOI's withdrawal) from this Court or a final order from the district court on remand.  Unless the requested Stay is granted, KCC will be deprived of the Land Exchange without the opportunity to oppose and adjudicate DOI's illegal "withdrawal" in Court.

**RESPECTFULLY SUBMITTED** this 25th day of April 2023.


/s/Steven W. Silver
Steven W. Silver
Alaska Bar No. 7606089
Silver Legal Services, LLC
2104 Polo Pointe Dr.
Vienna, VA 20191
703. 587-7792(cell)
Ssilver628@aol.com
ssilver628@aol.com

/s/James F. Clark
James F. Clark
Alaska Bar No. 6907025
Law Offices of James F. Clark
1109 C Street
Juneau, Alaska 99801
907.586.0122 (office)
907.586.1035 (fax)
jfclarkiii@gmail.com

Attorneys for King Cove Corporation. et al. Intervenor Defendants-Appellants

**CERTIFICATE OF COMPLIANCE FOR BRIEFS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND FORM 8**

9th Cir. Case Numbers: 20-35721, 20-35727, and 20-35728

The undersigned attorney certifies that:

1. This brief contains 4272 words and thus complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the type face volume of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Office Word 2010, font size 1 4 and Times New Roman type style.

Signature: /s/ Steven W. Silver                    Date: April 25, 2023

20

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April 2023 I caused to be electronically filed the foregoing Intervenor Defendant/Appellants King Cove Corporation's, et al. EMERGENCY MOTION UNDER CIRCUIT RULE 27-3(a) with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Steven W, Silver