EN BANC ARGUMENT HELD DECEMBER 13, 2022

Nos. 20-35721, 20-35727, and 20-35728

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, et al.,
*Plaintiffs/Appellees*,

v.

DEBRA HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior, et al.,
*Defendants/Appellants*,

and

KING COVE CORPORATION, et al.,
*Intervenor-Defendants/Appellants*

and,

STATE OF ALASKA,
*Intervenor-Defendant/Appellant*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA,
Case No. 3:19-cv-00216.      Hon. John W. Sedwick

---

## APPELLANT STATE OF ALASKA'S
## RESPONSE TO THE FEDERAL APPELLANTS' MOTION TO DISMISS

---

TREG TAYLOR
ATTORNEY GENERAL
Sean Lynch
*Assistant Attorney General*
P.O. Box 110300; Juneau, AK 99811-0300
(907) 465-3600
sean.lynch@alaska.gov
*Attorneys for Appellant State of Alaska*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................................ii

TABLE OF EXHIBITS ...............................................................................iii

INTRODUCTION .......................................................................................1

STATEMENT ..............................................................................................1

ARGUMENTS .............................................................................................8

    I.    The Secretary is without authority to breach a fully executed land exchange agreement with an Alaska Native corporation..................................................8

    II.    The exceptions to the mootness rule preclude dismissal. ................................9

        A. The matter is not moot as the Secretary's voluntary cessation of activities under the land exchange does not resolve the issues presented by the State of Alaska and KCC.....................................................................................9

        B. The Secretary's attempted unilateral withdrawal from an ANILCA 1302(h) land exchange makes this matter capable of repetition yet evading review. ...................................................................................................15

CONCLUSION ...........................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Already, LLC v. Nike, Inc.*
        568 U.S. 85 (2013) ............................................................. 10

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*
        938 F.3d 1147 (9th Cir. 2010) ............................................. 11

*American Civil Liberties Union of Nevada v. Masto*
        670 F.3d 146 (9th Cir. 2012) ............................................... 18

*Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*
        941 F.3d 1195 (9th Cir. 2019) ............................................ 16

*Bell v. City of Boise*
        709 F.3d 890 (9th Cir. 2013) ............................................. 10

*City of Angoon v. Marsh*
        749 F.2d 1413 (9th Cir. 1984) .............................................. 7

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*
        196 F.3d 958 (9th Cir. 1999) .............................................. 14

*Doyle v United States*
        129 Fed Cl. 147 (2016) ..................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*
        528 U.S. 167 (2000) ............................................ 10, 14, 15

*Gluth v. Kangas*
        951 F.2d 1504 (9th Cir. 1991) ............................................ 15

*Helfand v.Gerson*
        105 F.3d 530 (9th Cir. 1997) .............................................. 14

*Honig v. Doe*
        484 U.S. 305 (1988) ........................................................ 16

*Kettle Range Conservation Group v. U.S. Bureau of Land Management*
        150 F.3d 1083 (9th Cir. 1998) ............................................. 8

*Kingdomware Techs., Inc. v. United States*
        579 U.S. 162 (2016) ........................................................ 16

*New Hampshire v. Maine*
 532 U.S. 742 (2001) ........................................................................ 13

*Protectmarriage.com-yes on 8 v. Bowen*
 752 F.3d. 827 (9th Cir. 2014). ..................................................... 1, 17

*Rissetto v. Plumbers and Steamfitters Local 343*
 94 F.3d 597 (9th Cir. 1996) ........................................................... 14

*Rosebrock v. Mathis*
 745 F.3d 963 (9th Cir. 2014) .......................................... 10, 11, 12, 13

*Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) ..................... 14

*Sefick v. Gardner*
 164 F.3d 370 (7th Cir.1998) ........................................................... 14

*Sturgeon v. Frost*
 139 S. Ct. 1066 (2019) ..................................................................... 7

*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*
 513 U.S. 18 (1994) ................................................................... 17, 18

*White v. Lee*
 227 F.3d 1214 (9th Cir. 2000) ........................................................ 11

**Statutes**

ANILCA § 101(d); 16 U.S.C. § 3101(d) ........................................... 7

ANILCA § 1302 (h); 16 U.S.C. § 3192(h) ................................... 15, 16

## TABLE OF EXHIBITS

Exhibit 1 (USDOI's Decision on Protest of Filing Plats)

Exhibit 2 (Appraisal-KCC Lands – Izembek peninsula and islands)

Exhibit 3 (Appraisal-Federal Lands – Izembek road corridor)

Exhibit 4 (USACE FUDS Survey - UXO and Gun Emplacements)

Exhibit 5 (3:19-CV-00216-JWS, Fed. Defs.' Resp. to Pls.' Mot. for Summ. J.)

## INTRODUCTION

Secretary Haaland's attempt to back out of the fully executed and mostly implemented 2019 Land Exchange Agreement between the United States and the King Cove Corporation (KCC) did not moot this appeal; it created a new legal issue for the district court to resolve. Does the Secretary have the authority to withdraw from the 2019 Land Exchange? The Federal Appellants' motion to dismiss treats the Secretary's unilateral action as an unquestionable fait accompli. Whether the Secretary of the Interior has a congressionally granted power to terminate a binding land exchange agreement with an Alaska Native corporation, and the extent to which KCC can compel the delivery of a patent deed pursuant to the terms of the agreement, is an issue best addressed by the district court in the first instance. KCC's motion to this Court seeking injunctive relief (Doc. 153-1) seeks to preserve the status quo, providing a vehicle for this Court to issue a final decision.[1]

## STATEMENT

The 2019 Land Exchange Agreement between USDOI and KCC (collectively, the Parties) provided as its first substantive term: "The Parties agree to the exchange of real property interests set forth in the following paragraphs and agree to be bound thereby."

---

[1] "[A] court can ensure that a live controversy persists until the action is fully litigated by enjoining the challenged conduct until the litigation concludes." *Protectmarriage.com-yes on 8 v. Bowen*, 752 F.3d. 827, 836 (9th Cir. 2014).

2-ER-237 (Agreement ¶ A). The agreed upon land exchange contains five substantive steps prior to the Parties' exchange of deeds, and two of those steps are completed:

1. Detailed legal property descriptions of each Party's selected exchange lands had to be prepared. 2-ER-237-38 (Agreement ¶¶ B and D.3); USDOI's Bureau of Land Management performed the surveys of the exchange lands in accordance with Federal regulations and standards and recorded the survey after all applicable public notice and administrative appeal rights had been exhausted. Exhibit 1 (USDOI's Decision on Protest of Filing Plats). Maps of the selected lands can be found in Exhibit 2 at p. 1 (Appraisal-KCC Lands – Izembek peninsula and islands) and Exhibit 3 at p. 1 (Appraisal-Federal Lands – Izembek road corridor).

2. An appraisal of land values had to be prepared for the land selected for exchange by each Party. 2-ER-237-38 (Agreement ¶¶ C and D.3). Appraisals were prepared for, and submitted to, USDOI's Appraisal Valuation Services Office on August 10, 2020. The 1,737 acres of peninsulas, islands, and narrow shoals owned by KCC, which form the southern boundary of the Kinzarof Lagoon within the Izembek National Wildlife Refuge (NWR), have an appraised market value of $300,000. Exhibit 2 at p. 3 (Appraisal-KCC Lands – Izembek peninsulas and islands). The 490-acre narrow path connecting King Cove to the Cold Bay airport has an appraised market value of $252,000. Exhibit 3 at P.4 (Appraisal-Federal Lands – Izembek road corridor).

The three remaining steps in the USDOI-KCC Land Exchange are all requirements to be performed by USDOI:

3.      Because the exchange lands are classified as a Formerly Used Defense Site under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the 2019 Agreement requires that "[t]he United States will conduct, at its sole expense, a contamination survey of all lands to be exchanged between the parties." 2-ER-239-240 (Agreement ¶ L). Aside from the regular contamination of a former military facility, the Izembek isthmus served as a live fire range and has known deposits of unexploded ordnance. See Exhibit 4 (USACE FUDS Survey - UXO and Gun Emplacements). If CERCLA regulated contamination is located on any of the exchange lands, the Parties may make minor boundary adjustments or decide to convey the lands in their present state. 2-ER-240 (Agreement ¶ L.1). The United States' construction and operation of the Thornbrough Air Force Base (a/k/a the Cold Bay airport) from 1941 to 1958—including live fire exercises on the Izembek peninsula—demonstrates the resilience and durability of the Izembek ecosystem as migratory birds continue their annual return to the Izembek NWR.

4.      Because the Izembek isthmus has been used by Native Alaskans since time immemorial, the 2019 Agreement requires that "the United States must complete a Section 106 review under the National Historic Preservation Act of the U.S. Exchange lands." 2-ER-240 (Agreement ¶ M). KCC may request a minor boundary adjustment to avoid any historic property located during the Section 106 survey. *Id.*

5.      Lastly, the 2019 Agreement requires that the United States obtain an abstract of title and title insurance on the KCC-owned lands prior to exchange. 2-ER-239 (Agreement ¶ F).

3

Once the three remaining non-discretionary tasks are completed by USDOI, the United States must convey the U.S. Exchange Lands by patent, and KCC must convey the KCC Exchange Lands by quitclaim deed and by relinquishment of selection rights. 2-ER-239 (Agreement ¶ J). These three remaining USDOI duties can be quickly completed upon a final determination of the validity and legality of the 2019 Land Exchange Agreement.

The 2019 Agreement provides no terms or other mechanism for either party to terminate the mutual commitments. 2-ER-240 (Agreement ¶¶ 0 and P.8). USDOI committed to expedite its obligations to fully implement the Agreement. 2-ER-243 (Agreement ¶ P.12). The Agreement can be "amended, modified, or supplemented only by a written amendment signed by the Parties." 2-ER-241 (Agreement ¶ P.2). Most importantly, USDOI committed to use its best efforts to resolve any problems that may arise "in a spirit of good faith and fair dealing." 2-ER-243 (Agreement ¶ P.13).

Secretary Haaland's decision to breach the land exchange agreement is "based on legal and policy concerns." Doc. 144 at 28. The Secretary's noted legal concern is that Secretary Bernhardt had not updated the subsistence use evaluation that was prepared for USDOI's proposed disposition of the road corridor six years prior. Doc. 144 at 26. The legal issue of whether USDOI was required by Section 810(a) of the Alaska National Interest Land Conservation Act (ANILCA) to update its evaluation of subsistence uses and needs is raised for the first time on appeal, after the close of briefing and oral argument. Therefore, this Court has no administrative record or competing legal arguments upon which to determine whether the existing Section 810 evaluation of the

4

road corridor is adequate. The Secretary's Decision, however, begs the question of whether any procedural flaw or oversight could be cured by the Parties' amendment or supplementation of the 2019 Agreement.

The Secretary's Decision, next, recognizes that "The District Court did not rule on whether the 2019 decision violated the National Environmental Policy Act (NEPA) or the Endangered Species Act (ESA). Those claims remain unresolved before the District Court." Doc. 144 at 25. But the Secretary continues by adopting the position of her opposing parties, the Friends, by arguing "As a matter of policy, I have concluded that some form of additional NEPA analysis should have been undertaken." Doc. 144 at 27. The Secretary's new position is contrary to the legal arguments presented to the District Court, where USDOI stated:

> "ANILCA's section 910 is another clear statement by Congress that NEPA does not apply to this land transaction. Section 910 states:
>
>> The National Environmental Policy Act of 1969 (83 Stat. 852) shall not be construed, in whole or in part, as requiring the preparation or submission of an environmental impact statement for withdrawals, conveyances, regulations, orders, easement determinations, or other actions which lead to the issuance of conveyances to Natives or Native Corporations, pursuant to the Alaska Native Claims Settlement Act, or this Act. Nothing in this section shall be construed as affirming or denying the validity of any withdrawals by the Secretary under §14(h)(3) of the Alaska Native Claims Settlement Act."

Exhibit 5 (3:19-CV-00216-JWS, Fed. Defs.' Resp. to Pls.' Mot. for Summ. J.) Doc. 38 at 38. The Secretary's presentation of a "policy judgment" that imposes new obligations beyond what the law requires and completely contradicts the arguments presented by

USDOI earlier in this litigation violates the good faith and fair dealing requirement of the 2019 Agreement.

Similarly, Secretary Haaland adopts the Friends' arguments that an ESA Section 7 review should have been undertaken regarding "associated activities such as road construction, gravel mining and commercial traffic" even though there are no construction activities or other ground disturbances authorized or permitted by the 2019 Land Exchange Agreement. Doc. 144 at 27. The Secretary's current position is contrary to legal authorities presented to the district court, and directly contradicts USDOI's clear argument:

> Nothing has changed since 2013 with respect to the potential effects of a land exchange agreement on listed species and critical habitat. The 2019 Agreement, in and of itself, is still a purely legal transaction and does not authorize any ground disturbing activities. And no activities in the reasonably foreseeable future have been identified that would affect these species. This is because road construction, if any, can proceed only after any proposed road project successfully passes numerous significant hurdles like funding, planning, any state approvals and permitting, and federal approvals and permitting (after the appropriate ESA review). For these reasons, the Service continues to rely on its 2013 "no effect" determination. This determination is reasonable, supported by the record, and should be upheld.

Exhibit 5, Doc. 38 at 42; USDOI's full ESA argument at pp. 40-46. Again, it appears that the Secretary's "policy judgment" is to disregard governing law to align herself with the Friends' goals to prohibit the completion of the USDOI-KCC land exchange.

The final policy objective given by Secretary Haaland for withdrawing from the land exchange agreement is to "place a high premium on the protection of subsistence resources and uses." Doc. 144 at 27. The Secretary's heightened focus on subsistence resources comes in the context of her adopting the Friends' argument that there are

6

limited "conservation and subsistence purposes of ANILCA." Doc. 144 at 27; see also, at

28 ("the impacts to conservation and subsistence values were not fully developed in the

record"). The Secretary's new and restricted view of the purposes of ANILCA goes

against the plain language of ANILCA Section 101(d), and USDOI's earlier arguments to

this Court:

> Congress summarized ANILCA's purposes as providing for the "protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska," while also providing "adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people." 16 U.S.C. § 3101(d). As the Supreme Court recently explained, Congress designed ANILCA, "starting with its statement of purpose," with "twofold ambitions": protect public lands while providing for the economic and social needs of Alaska's people. *Sturgeon v. Frost*, 139 S. Ct. 1066, 1075 (2019). This Court has thus long recognized that ANILCA's purposes can be distilled to the "dual purpose" of furnishing "guidelines for the protection for the national interest in the scenic, natural, cultural and environmental values of the public lands in Alaska and to provide an adequate opportunity for satisfaction of the economic and social needs of the people of Alaska." *City of Angoon v. Marsh*, 749 F.2d 1413, 1415-16 (9th Cir. 1984).

Doc. 14 at 33; See also Exhibit 5, Doc. 38 at 31. By choosing to disregard ANILCA's

stated purpose of providing adequate opportunities for the economic and social needs of

Alaskans, the Secretary's proposed reconsideration of the KCC land exchange usurps the

authority of this Court to determine whether ANILCA Section 101(d) is, in fact, a

purpose of ANILCA that can be considered in the Secretary's land management decision-

making.

**ARGUMENTS**

**I.     The Secretary is without authority to breach a fully executed land exchange agreement with an Alaska Native corporation.**

USDOI's argument for dismissal of the appeal is wholly dependent on the premise that "there is no longer an agreement to be invalidated, vacated, or set aside" (Doc. 144, p. 7). However, USDOI presents no federal law or other legal authority that would allow the Secretary of the Interior to rescind a multi-step land exchange with Alaska Natives. This Court has long recognized that executed land exchange agreements vest rights in private entities that cannot be rescinded or enjoined without the private entities' participation in the legal proceedings. *Kettle Range Conservation Group v. U.S. Bureau of Land Management*, 150 F.3d 1083, 1086-87 (9th Cir. 1998). Likewise, the Federal government's breach of a land exchange agreement, and the remedies available to the exchanging land owner, are determined under the principles of contract law. *Doyle v United States,* 129 Fed Cl. 147, 154 (2016). Thus, the issues before the Court regarding the lawfulness of the 2019 Land Exchange Agreement remain justiciable; Secretary Haaland's March 14, 2023 Decision just created <u>additional</u> controversies between the parties.

To grant USDOI's motion to dismiss, this Court would have to decide that the Secretary lawfully withdrew from the land exchange, and that the unfulfilled requirements of the 2019 Land Exchange Agreement are unenforceable by KCC. The Court's dismissal of the appeal would be made without a review of the administrative record supporting the Secretary's Decision and without competing arguments regarding

8

the legality and enforceability of the Decision. These newly created controversies surrounding the 2019 Land Exchange Agreement do not resolve the issues presently before the Court—nor do they lead to the conclusion that "the 2019 Agreement is gone, and there is no reasonable prospect that the Secretary will revive it." Doc. 144 at 21. The enforceability of the remaining terms of the 2019 Land Exchange Agreement should be determined by the district court with the current administrative record supplemented by the administrative record of the Secretary's recent decision. Since the legality and enforceability of the Secretary's March 14, 2023 decision is yet to be determined by the district court, USDOI has failed to show that this case is moot.

**II.      The exceptions to the mootness rule preclude dismissal.**

**A.      The matter is not moot as the Secretary's voluntary cessation of activities under the land exchange does not resolve the issues presented by the State of Alaska and KCC.**

The Secretary's decision to breach a binding land exchange agreement and adopt the arguments and positions of the Plaintiffs-Appellees does not resolve any of the issues currently before the Court. The Secretary's change of position is premised on a series of policy judgments, and contradicts the legal arguments presented by USDOI in this Court and the lower court proceedings. The impermanent nature of the Secretary's realignment, the inconsistency of these new policy judgments with the legal arguments presented, and the outright failure of the Secretary's decision to resolve the legal issues regarding the challenged land exchange ensure the continuing case and controversy over the USDOI-KCC land exchange.

"A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 133 S.Ct. 721, 726 (2013) (internal quotes omitted). KCC, as a party to the challenged land exchange, and the State of Alaska as a provider of infrastructure to support economic opportunities and the social needs of Alaskans, certainly have legally cognizable interests in the 2019 Land Exchange Agreement. The voluntary cessation of challenged conduct—such as USDOI's adopting the opposing parties' arguments as a policy judgment—does not ordinarily render a case moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 708 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotes omitted)). The party asserting mootness bears a "heavy burden" in meeting this standard. *Id*

This Court has "not set forth a definitive test for determining whether a voluntary cessation … has rendered a case moot." *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014). But the Court expressed reservations about finding mootness where a "new policy … could be easily abandoned or altered in the future." *Id*. (quoting *Bell v. City of Boise,* 709 F.3d 890, 901 (9th Cir. 2013)). The Court's "concern with policy changes that are not cemented by statute or some other inertial form [is] that the purported change in policy may be gamesmanship." *Rosebrock v. Mathis*, 745 F.3d at 973.

The Federal Appellants present the Secretary's decision as "entrenched" and "permanent." Doc. 144 at 13-14 (quoting *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2010)). However, the policy judgments underlying the Secretary's action are insufficiently grounded when viewed through the lens of *Rosebrock v. Mathis*'s indicia of permanence and finality. For instance, the permanence of a policy can be shown when it "has been in place for a long time when we consider mootness." *Rosebrock*, at 972 (quoting, *White v. Lee,* 227 F.3d 1214, 1243-44 (9th Cir. 2000)). The Secretary's surprise change in policy for the land exchange under review does not meet the Court's expectations of durability. Likewise, the policy change should be "broad in scope and unequivocal in tone." *Id*. The Secretary's recent policy switch could not be any narrower in scope, as it only affects a single land exchange with a single Alaska Native corporation. Similarly, by restricting the scope of the new policy to a single transaction, the policy equivocates on whether it would be applicable to land exchange agreements with other Native Corporations or other ANILCA inholdings. "A case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the offending provision [from the plaintiffs' perspective[2]]." *Rosebrock,*

---

[2]    The Plaintiffs-Appellees challenged USDOI's 2019 Land Exchange Agreement alleging offending provisions and processes that violated the APA, ANILCA, NEPA, and the ESA. USDOI, KCC, and the State argued that those provisions and processes were non-offensive and Defendants-Appellants collectively defended the legality and the administrative processes of the 2019 Land Exchange Agreement. With the Secretary of the Interior's recent flip of positions, USDOI's return to its earlier defenses of the legality of ANILCA land-exchanges and processes would be USDOI's reenactment of the offending provisions from the Plaintiffs-Appellees' perspective.

at 971. In this instance the, USDOI is free to switch back to its earlier positions for KCC's or others' land exchanges under ANILCA. Therefore, the Secretary's Decision does not have the qualities of these two indicators of a permanent policy under *Rosebrock.*

Similarly, this Court expects the policy change to fully address all the objectionable measures challenged in the litigation. *Rosebrock,* at 972. Secretary Haaland's decision document purports to address three issues that were challenged by the Plaintiff-Appellees:

1.    The Decision would require a NEPA analysis prior to exchanging land KCC, even though ANILCA § 910 clearly exempts NEPA analyses for land conveyances to Alaska Natives and ANCSA Corporations;

2,    The Decision would forego considerations of the ANILCA § 101(d) purpose of providing adequate opportunities for Alaska and its people when analyzing a new land exchange with KCC, even though ANILCA § 101(d)'s purpose is recognized by this Court and the U.S. Supreme Court; and

3.    The Decision would require a more in-depth ESA Section 7 analysis although a land exchange is a purely legal transaction that authorizes no ground disturbing activities.

The Secretary's attempt to moot the case before this Court certainly does not resolve <u>all</u> the measures challenged in the underlying litigation. The Secretary's Decision does not address the Administrative Procedures Act requirements for ANILCA land exchanges by successive administrations. Nor does the Decision address the applicability

of ANILCA Title XI within land exchanges authorized under ANILCA 1302(h). The resolution of these litigated issues is necessary for the completion of KCC's land exchange and any other ANILCA land exchange. Since the Secretary's Decision did not address all issues disputed in the litigation, the Decision fails to be the type of conclusive policy that can moot a case under the *Rosebrock* examples.

A wholly independent reason that this Court should reject the recent policy judgments of Secretary Haaland is that the new policies contradict the arguments presented by USDOI throughout this litigation. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (2001). Secretary Haaland's policy judgments used to support her unilateral breach of the 2019 Land Exchange Agreement are aligned with the legal arguments presented by the Plaintiff-Appellees, and contrary to those presented by the Federal Appellants; the Secretary advances these policy judgments for the explicit reason to "withdraw from the 2019 Land Exchange" (Doc. 144 at 28), which is the sole basis for the Federal Appellants' mootness argument (Doc 144 at 11-12) ("There is no longer a 'present controversy' about the 2019 Agreement and Secretary Bernhardt's reasons for entering into it because Interior has now withdrawn from that agreement."). This type of gamesmanship is what judicial estoppel is designed to prevent.

Judicial estoppel "prohibits a party from gaining an advantage by taking one position and then seeking a second advantage by taking a different position that is

incompatible with the first." *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) (citing *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996)). The doctrine is intended to protect the integrity of judicial proceedings by preventing a litigant from "playing fast and loose with the courts." *Id.* (citing *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Secretary Haaland's decision document does not permanently address any of the issues raised in this appeal, as it merely adopts the arguments of the Plaintiffs-Appellees to avoid a full and final decision by this Court. The integrity of the judicial process, and the final resolution of case and controversies presented to this Court, require that USDOI be estopped from presenting incompatible arguments.

Secretary Haaland cannot defeat this Court's jurisdiction by purporting to resolve the legal issues herself, particularly when parties are relying on the Secretary to stand by an agreement already signed. Moreover, her decision document may well be found unenforceable on judicial review and could very easily be changed again either by the USDOI or by injunction. Thus, the Secretary's act of voluntary withdrawal provides no permanence or entrenchment that could assure this Court that the disputed issue in this litigation "could not reasonably be expected to recur." *Friends of the Earth,* 528 U.S. at 189, 120 S.Ct. at 708 (internal quotes omitted); see also *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.,* 196 F.3d 958, 963 n. 1 (9th Cir.1999) (adopting the reasoning of *Sefick v. Gardner,* 164 F.3d 370, 372 (7th Cir.1998), which concluded a changed policy was insufficient to moot a controversy because the policy, adopted after the commencement of the suit, was "not implemented by statute or regulation and could be

changed again"); *Gluth v. Kangas,* 951 F.2d 1504, 1507 (9th Cir.1991) (concluding a vague policy enacted during litigation did "not deprive the court of a justiciable controversy"). The Federal Appellants simply do not meet their heavy burden of showing that this matter is moot. *Friends of the Earth,* 528 U.S. at 189, 120 S.Ct. at 708. Therefore, the Court should deny the USDOI's motion to dismiss.

> **B.     The Secretary's attempted unilateral withdrawal from an ANILCA 1302(h) land exchange makes this matter capable of repetition yet evading review.**

Secretary Haaland's decision does not disclose the legal authority under which she authorized USDOI to withdraw from the 2019 Land Exchange Agreement. The decision is simply premised on "legal and policy concerns." Doc. 144, at 28. If the Court finds that the Secretary of the Interior has the power and authority to unilaterally withdraw from land exchange agreements executed under ANILCA section 1302(h), then this type of land exchange could be terminated by USDOI at any particular date prior to the conclusion of litigation challenging the agreement's enforceability and compliance with law. Since ANILCA § 1302(h) is the only statute that authorizes USDOI to exchange land in refuges and other conservation system units in Alaska, any potential ANILCA § 1302(h) land exchange with KCC, or the State of Alaska, or other private inholding within an ANILCA conservation system unit would be of an indeterminately short duration.

The Secretary's legal authority to unilaterally terminate a land exchange agreement, if there is one, would make litigation over these agreements of inherently limited duration. As this Court explained:

> We recognize these types of controversies as "inherently limited in duration," because they will only ever present a live action until a particular date, after which the alleged injury will either cease or no longer be redressible. The limited duration of such controversies is clear at the action's inception.

*Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2004). The entire multi-step process to complete an equal value exchange under ANILCA 1302(h)—including negotiations, land selection and surveying in limited summer months, appraisals, and post-selection resource surveys required by Federal laws—takes years to complete. With the mercurial nature of the Federal government from administration to administration, there is "a reasonable expectation" that KCC and the State will once again be subjected to the same legal challenges before this Court on this or another administration's land exchange agreement. See, *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016). A "reasonable expectation" does not mean a virtual certainty. *Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019). "Reasonable expectation" means something less than a "demonstrat[ion] that a recurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). Since a land exchange that draws opposing litigation is extremely unlikely to be completed within a four-year term of any Federal administration, the Secretary of the Interior's unfettered discretion to withdraw from any ANILCA § 1302(h) land exchange (if that is true) would expose the non-federal land owner to significant risk of the successor administration's unilateral termination of the agreement and the litigation.

Additionally, the Secretary's decision to terminate the land exchange expressly noted "[t]his decision does not foreclose further consideration of a land exchange to address the community's concerns" Doc. 144 at 28. The Secretary's decision, and USDOI's ongoing discussions with KCC regarding additional terms to a land exchange, show that a land exchange with KCC for road corridor to Cold Bay airport is capable of repetition and will evade review. See Doc. 153-2 (Declaration of Della Trumble). KCC's motion for injunctive relief requests that USDOI be ordered to cease discussions about a substitute ANILCA 1302(h) land exchange, and all other actions to implement the Secretary's Decision, until there has been an opportunity for judicial review of the Decision. Doc. 353-1 at 30-31. KCC and the State can, therefore, reasonably expect to continue litigation over the same issues currently on appeal as none of these current controversies have been resolved by Secretary Haaland's change of position to support the Friends' arguments.

Since litigation is unavoidable between the parties to the appeal, whether on remand to the district court or under a cross-claim challenging the Secretary's Decision, the matter is clearly capable of repetition but would evade review if dismissed. Therefore, the Federal Appellants' motion to dismiss the appeal should be denied.

## CONCLUSION

In the context of analyzing arguments to justify vacatur on systemic grounds, the U.S. Supreme Court pondered: "It seems to us inappropriate, however, to vacate mooted cases in which we have no constitutional power to decide the merits, on the basis of assumptions about the merits." *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513

17

U.S. 18, 27, 115 S.Ct. 386, 392-393 (1994). While the procedural posture of this case is different from *U.S. Bancorp*, the same underlying issue faces this Court: Is it appropriate to decide whether a matter has become moot on the basis of assumptions about the merits of the intervening action that threatens the viability of the case? No is the clear answer. The Secretary's Decision is premised on USDOI's flip of litigation positions, although "[a] litigation position … conveyed to a court becomes binding in any forum in which the same controversy arises." *American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 146, 1065 (9th Cir. 2012). Therefore, this Court should reserve analysis of the merits of the Secretary's Decision for the district court's review on remand. See, *Protectmarriage.com-yes on 8 v. Bowen*, 752 F.3d. at 836 ("[A] court can ensure that a live controversy persists until the action is fully litigated by enjoining the challenged conduct until the litigation concludes.").

For all the foregoing reasons, this Court should: 1) deny the Federal Appellants' motion to dismiss; 2) issue its opinion(s) on this appeal; and 3) remand the matter to the district court for further proceedings.

Respectfully submitted,

Dated: April 26, 2023.

/s/ Sean Lynch
Sean Lynch
AK Bar No. 0710065
Assistant Attorney General
P.O. Box 110300
Juneau, AK 99811-0300
(907) 465-3600
sean.lynch@alaska.gov
*Attorney for the Appellant*
*State of Alaska*

## DECLARATION OF COUNSEL
## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(c) and 27(d) I certify that:

This motion complies with the type-volume limitation of Fed. R. App. P. 32(c) because this motion contains 4923 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(g)(1).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type–style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: April 26, 2023.

<u>/s/ Sean Lynch</u>
Sean Lynch
AK Bar No. 0710065
Assistant Attorney General
P.O. Box 110300
Juneau, AK 99811-0300
(907) 465-3600
sean.lynch@alaska.gov

*Attorney for Appellant/Intervenor/Defendant*
*State of Alaska*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: April 26, 2023

/s/ Sean Lynch
Sean Lynch
AK Bar No. 0710065
Assistant Attorney General
P.O. Box 110300
Juneau, AK 99811-0300
(907) 465-3600
sean.lynch@alaska.gov

*Attorney for Appellant/Intervenor/Defendant State of Alaska*