- EN BANC ARGUMENT HELD DECEMBER 13, 2022

No. 20-35721, No. 20-35727, and No. 20-35728

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, et al.,
Plaintiffs-Appellees,

v.

DEBRA HAALAND, in her official capacity as
Secretary of the U.S, Department of the Department of Interior et al.,
Defendants/Appellants,

and

KING COVE CORPORATION, et al. (KCC)
Intervenor-Defendants/Appellants,

and

STATE OF ALASKA,
Intervenor-Defendant/Appellants.
_____

Appeal from the United States District court, District of Alaska,  Anchorage
Honorable John W. Sedwick Case No. 3:19-cv-00216
_____

## INTERVENOR DEFENDANTS-APPELLANTS' OPPOSTION
## TO FEDERAL DEFENDANTS-APPELLANTS' MOTION TO DISMISS
_____

Steven W. Silver                          James F. Clark
Alaska Bar No. 7606089                    Alaska Bar No. 6907025
Robertson, Monagle, and Eastaugh, PC      Law Offices of James F. Clark
2104 Polo Pointe Dr.                      1109 C Street
Vienna, VA 20191                          Juneau, Alaska 99801
703. 587-7792(cell)                       907.586.0122 (office)
Ssilver628@aol.com                        907.586.1035 (fax)
ssilver628@aol.com                        jfclarkiii@gmail.com

_Attorneys for King Cove Corporation. et al._ Intervenor Defendants-Appell

## CORPORATE DISCLOSURE STATEMENT
### Case: 20-35721, 03/21/2023, ID: 12679029.

Pursuant to Federal Rule of Appellate Procedure 26.1,  I Steven Silver state the

following:

1.      King Cove Corporation is a Native Alaskan corporation organized under the

laws of the State of Alaska and offers no shares for sale to the public. It has no

parent corporation.

2.      Agdaagux Tribe of King Cove and the Native Village of Belkofski are tribal

entities recognized by the Department of Interior.


s/ Steven Silver                        Dated: April 26, 2023
AK Bar No. 7606089
Silver Legal Services
2104 Polo Pointe Dr.
Vienna, VA 22181
(703) 587-7792
Ssilver628@aol.com
Attorney for Appellant
King Cove Corporation, et al.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................................. i

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ..............................................................iv

INTRODUCTION…………………………………………………………..1

FACTS……………………………...……………………………………….3

ARGUMENT……,,,,,,,………………………………………………………6

I.   DOI'S PURPORTED "WITHDRAWAL" FROM
     THE 2019 LAND EXCHANGE AGREEMENT
     IS INVALID BECAUSE IT VIOLATES THE APA………..…….6

     A. Introduction…………………………………………………….6

     B. Standard for Burden of Proving a Case Moot……………………7

     C. DOI's "Withdrawal" Violated the APA…………………………8

          1.   The Secretary Withdrew from the Exchange
               Agreement Because of Adverse Impacts from
               Road Construction. This Reason for Withdrawal
               Violates the APA Because It Runs Counter to
               the Fact that the Exchange Agreement did not
               Authorize Road Construction…………………………..8

          2.   The Withdrawal Violates the APA Because
               DOI Has Not Provided a Reasoned Explanation
               for Its Change of Facts…………………………………10

          3.   DOI's Withdrawal from the Exchange Agreement

INTERVENOR DEFENDANTS-APPELLANTS' OPPOSTION
TO FEDERAL DEFENDANTS-APPELLANTS' MOTION TO DISMISS

Violates the APA Because DOI Violated Its
Own Procedures for Consultation with ANCSA
Corporation and Government to Government
Consultation with Alaska Native Tribes……………………..11

D. DOI Is Not Entitled to A Determination that this Case is
Moot without Judicial Review of Its APA Violations………………14

E. Alaska and KCC Have Standing to Continue the Defense of
the Exchange Agreement Even Though DOI Has Changed
Sides………………………………………………………………....15

F. This Court Should Not Order Vacatur……………………………17

G. Conclusion………………………………………………………..18

II.   DOI'S PURPORTED "WITHDRAWAL" DOES NOT RENDER
THIS CASE MOOT…………………………………………………..18


A. Introduction………………………………………….……..………18

B. The "Capable of Repetition Yet Evading Review"
Exception Applies to this Case…………………………….………18

C. The "Voluntary Cessation" Exception Applies……………………..22

D. Conclusion………………………………………………………..23


CERTIFICATE OF COMPLIANCE…………………………………………..24

CERTIFICATE OF SERVICE……………………………………………………25

## TABLE OF AUTHORITIES

## CASES

*Chafin v. Chafin*,
    568 U.S. 165, 172 (2013)…………………………………..…………..…...8

*County of Los Angeles v. Leavitt*,
    521 F.3d 1073, 1078 (9th Cir. 2008)…………………………………..…10

*Didrickson v. U.S. Dep't of Interior*,
    982 F.2d 1332, 1338 (9th Cir.1992)…………………………………….....16

*FCC v. Fox Televisions, Inc.*,
    556 U.S. 502, 515(2009)……………………………………………….…10

*Forest Guardians v. U.S. Forest Serv.*,
    329 F.3d 1089, 1095 (9th Cir. 2003)…………………………..…..22

*Garcia v. Lawn*,
    805 F.2d 1400, 1402 (9th Cir. 1986))…………………………………..19

*In re Arnold Baker Farms*
    85 F.3d 1415 (9th Cir. 1996)……………………………………………20

*In Teton Historic Aviation Found. v. United States* ,
    248 F.Supp.3d 104, 111 (D.D.C. 2017)………………………….…...13

*Louisiana v. Am. Rivers*,
    142 S.Ct. 1347, 1347 (2022)……………………………………………18

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
    139 S. Ct. 1652, 1660 (2019). …………………………………….......…8

*Morton v. Ruiz,*
    415 U.S. 199 (1974)…………………………………………………13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)…………..….…10

*Muckleshoot Indian Tribe v. U.S. Forest Service,*
    *177 F.3d 800 (9th Cir. 1999)* …………….……..………………………7,8

*N. Alaska Envtl. Ctr. v. Haaland*
………………………………………………………………………………17

*Organized Village of Kake v. U.S. Dep't. of Agric.,*
    795 F.3d 956, 968-969 (9th ..Cir. 2015) …………….....…………3,10,11,15

*Protectmarraige.com-yes on 8 v. Bowen*,
    752 F.3d. 827, 836-837 (9th Cir. 2014). …………………….....………19

*Serv. Emps. Int'lUnion v. Nat'l Union of Healthcare Workers,* **5**
    98 F.3d 1061, 1068 (9th Cir. 2010)…………………………………………19

*Singleton v. Wulff* ,
    **5**428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ………....…..2,15

*Vasquez v. Wolf,*
    No. 20-55142, at *2 (9th Cir. Dec. 4, 2020)…………………….….……19

## STATUTES

Administrative Procedure Act (5 U.S, C 706(2)….…………………6,8,9,11,14,16

Endangered Species Act (16 U.S. C . 1531et.seq) et. seq)………..…………..4,15

Alaska National Interest Lands Conservation Act (ANILCA), (16 U.S.C 3101 et. seq.) ..………..……………………………………………....…2,3,8,18

Alaska Native Claims Settlement Act (43 U.S.C 1601 et.seq) .   …………2.3,13,18

National Environment Policy Act (42 U.SC.4321 et.seq). ……………………..……11

## BLM MANUAL

512  DM 6.4 ( includes reference to Executive Order. 13175 and 512 DM 7)…...12

INTERVENOR DEFENDANTS-APPELLANTS' OPPOSITION
TO FEDERAL DEFENDANTS-APPELLANTS' MOTION TO DISMISS

## INTRODUCTION

Unless this Court adjudicates Intervenor-Defendants/Appellants, King Cove Corporation's (hereinafter "KCC") opposition to Defendants/Appellants Department of Interior's (hereinafter "DOI") March 14, 2023, withdrawal from the 2019 Land Exchange Agreement (hereinafter "Exchange Agreement") it executed with KCC, before it adjudicates DOI's Motion to Dismiss its case with Plaintiffs/Appellees (hereinafter "Friends"), a great injustice would be done to the Alaska Natives of KCC. This is because DOI's Motion to Dismiss is cleverly postured to exclude KCC's opposition to the withdrawal. DOI contends that Friends' case against it is moot because DOI has "withdrawn" from the Land Exchange with KCC.

Because DOI's approval of the Exchange Agreement with KCC is the subject of Friends' Complaint, Friends have no reason to contest DOI's Motion to Dismiss. A vacation of the Exchange Agreement would be a windfall gift to Friends of the relief their Complaint seeks.

KCC has a compelling case in opposition to DOI's purported withdrawal (hereinafter "withdrawal), which KCC respectfully requests this Court to adjudicate

before taking up DOI's Motion to Dismiss. Doing so is within the Court's discretion[1] and  would be a logical way to proceed, because if KCC's opposition prevails, the Exchange Agreement continues, and Friends' case against DOI is not moot.

DOI justifies the withdrawal by citing subsistence and other adverse environmental impacts it contends would result from "construction of a  road" it claims is authorized by the Exchange Agreement. However, this justification is contrary to the evidence  because the  Exchange Agreement did not authorize construction of a road.[2]

Moreover, DOI's claim that it withdrew from the Exchange Agreement because of road construction impacts contradicts DOI's previous briefs and arguments to the district court, the three-judge panel, and to this panel (as recently as December 13, 2022), explaining  that the Exchange Agreement *did not* authorize construction of a road. DOI has not provided a reasoned explanation why it argued there was no road which could impact the environment on December 13, 2022, when it appeared before this panel, but reversed itself on March 14, 2023, claiming it had

---

[1] *Singleton v. Wulff* , 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

[2] See July 12, 2019, Land Exchange Decision at page 16.

INTERVENOR DEFENDANTS-APPELLANTS' OPPOSITION
TO FEDERAL DEFENDANTS-APPELLANTS' MOTION TO DISMISS

to withdraw from the Exchange Agreement because of adverse impacts from a road with no notice until that very day to KCC.[3]

The "withdrawal" also violates the APA because it was made without good faith warning or government-to-government consultation with KCC or the affected Agdaagux Tribe of King Cove and Native Village of Belkofski (the Tribes) as required by DOI's own procedures.

Finally, "withdrawal" was unnecessary – any environmental concerns that DOI had with the Exchange Agreement could have been resolved with KCC through DOI's required pre-decisional consultation process and the Land Exchange's amendment provision.[4]

For these reasons, set out more fully below, DOI is unable bear its heavy burden of proving that this case is moot Alternatively, even if the Court considers DOI's withdrawal from the Exchange Agreement, the "Capable of Repetition Yet Evading Review" and "Voluntary Cessation" exceptions to the mootness also apply.

## FACTS

On July 12, 2019, then Secretary of Interior David Bernhardt signed an equal-value Exchange Agreement with KCC in accordance with ANILCA § 1302 (h). Each

---

[3] *Organized Village of Kake v. U.S. Dep't. of Agric*.,795 F.3d 956, 968-969 (9th Cir. 2015).
[4] Paragraph P 2 of the Exchange Agreement at page 7.

party made promises of performance to the other, undertook mutual obligations, and "agree[d] to be bound thereby."[5]

It was a land exchange agreement and nothing more. It specifically did not include authorization to construct a road:

> A land exchange, like the one contemplated here, will allow KCC to obtain land holdings that align with the needs of the King Cove community to ***potentially pursue the construction of a road at some point in time***. Should KCC decide at a later date to pursue the construction of a road connection between Cold Bay and King Cove, it will need to comply with all permitting actions and environmental reviews required by both Federal and State law. ***Nevertheless, as noted above, any decision by KCC to pursue a road connection is separate and distinct from the land exchange authorized here***.[6] (Emphasis added).

Friends challenged the lawfulness of the 2019 Agreement under ANILCA, the National Environmental Policy Act ("NEPA), and the Endangered Species Act ("ESA"). On June 1, 2020, the Alaska district court vacated the Agreement.

DOI and KCC appealed to a three-judge panel of this Court which reversed the district court on March 16, 2022, and remanded Appellees' NEPA and ESA claims to the district court.[7]

---

[5] Paragraph A of the Exchange Agreement at page 3.
[6] July 12, 2019, Land Exchange Decision at page 16.
[7] 29 F. 4th 432 (9th Cir. 2022).

On April 29, 2022, Friends petitioned this Court for an *en banc* rehearing. DOI, KCC and Defendant-Intervenor-Appellants (hereinafter "Alaska") were directed to file responses to the petition on May 16, 2022, which they did on August 5, 2022.

On November 10, 2022, this Court ordered an *en banc* rehearing and vacated the three-judge panel opinion that had overturned the district court Decision.[8] Oral argument before this panel was held, and the case deemed "submitted," on December 13, 2022.

Before a panel decision was published, DOI issued a Decision Memorandum on March 14, 2023, that abruptly and unilaterally withdrew DOI from the Exchange Agreement with KCC without government-to-government consultation or other than same day notice. (Trumble Declaration at ¶ 8).

On March 16, 2023, the Agdaagux and Belkofski Tribes requested that DOI suspend filing the Motion to Dismiss (announced to KCC and the Tribes on March 14, 2023) until government-to-government consultation could occur.[9] (Trumble Declaration at ¶ 10). Instead, on March 17, 2023, DOI filed a Motion to Dismiss, asserting that the case is moot because Interior had "withdrawn" from the 2019 Land Exchange Agreement. The Tribes' request for prior consultation was not answered

---

[8] 54 F. 4th 608 (9th Cir. 2022).
[9] Tribes' March 16, 2023, letter attached.

and there was no prior government-to-government consultation. (Trumble Declaration at ¶ 11).

On April 25, KCC filed an Emergency Motion with this Court for an injunction to Stay any and all activities by DOI to implement its March 14, 2023, Memorandum of Decision, pending a final order on KCC's adjudication (opposing the withdrawal) from this Court or a final order from the district court on remand.

## ARGUMENT

### III. DOI'S PURPORTED "WITHDRAWAL" FROM THE 2019 LAND EXCHANGE AGREEMENT IS INVALID BECAUSE IT VIOLATES THE APA.

A. Introduction.

DOI admits that a land exchange agreement exists with KCC.[10] DOI also admitted that the Agreement complies with the law, at least through December 13, 2022, when it so argued to this panel.[11]  Nothing in its steadfast defense of the

---

[10] "This dispute stems from the Department of the Interior's renewed effort to enter into a land exchange agreement with King Cove Corporation ("KCC"), an Alaska Native village corporation, pursuant to the authority set forth in section 1302(h) of the Alaska National Interest Lands Conservation Act ("ANILCA")." Federal Defendants' Response to Plaintiffs' Motion for Summary Judgment Case 3:19-cv-00216-JWS-Document 38 Filed 3-3-20 at Page 9.

[11] "Two Secretaries of the Interior have properly concluded that such an agreement serves both the best interests of the people of Alaska and the purposes of ANILCA, while at the same time complying with relevant federal laws, including ANILCA, the National Environmental Policy Act ("NEPA"), and the Endangered Species Act

Agreement and its legality changed from the time DOI made these representations until the Secretary's March 14, 2023, Decision Memorandum and DOI's March 17, 2023, Motion to Dismiss. (Trumble Declaration at ¶ 12).

B. Standard for Burden of Proving a Case Moot.

This Court's decision in *Muckleshoot Indian Tribe v. U.S. Forest Service*, 177 F.3d 800 (9th Cir. 1999) illustrates DOI's heavy burden to prove this case is moot.

In *Muckleshoot* Weyerhaeuser contended that a Tribe's appeal to the Ninth Circuit on NEPA grounds was moot because Weyerhaeuser and the Forest Service had executed a land exchange, Weyerhaeuser had assumed the obligation to manage the land it received, Weyerhaeuser had obtained state permits to harvest timber from that land, and Weyerhaeuser had harvested 10% of that land. After pointing out "its reluctance to invoke the doctrine of mootness" the Court denied Weyerhaeuser's mootness defense because "[c]onveyance of property to another does not moot a case" and "[w]here the actions in a title transfer can be undone this court will not find meritorious the defense of mootness." *Muckleshoot* at 815.

The same concept applies here. DOI's proclamation that it has "withdrawn" from the land exchange with KCC does not moot this case because DOI's withdrawal can be undone if a court finds that DOI's "withdrawal" violated the APA.

---

("ESA")." Federal Defendants' Response to Plaintiffs' Motion for Summary Judgment Case 3:19-cv-00216-JWS - Document 38 Filed 3-3-20 at Page 9.

INTERVENOR DEFENDANTS-APPELLANTS' OPPOSITION
TO FEDERAL DEFENDANTS-APPELLANTS' MOTION TO DISMISS

The Supreme Court has also cautioned against reflexive findings of mootness, holding that a case is moot only if "it is impossible for a court to grant any effectual relief whatever," a "demanding standard" that courts must apply critically, *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 139 S. Ct. 1652, 1660 (2019). Indeed, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin,* 568 U.S. 165, 172 (2013).

C. DOI's "Withdrawal" Violated the APA.

1. The Secretary Withdrew from the Exchange Agreement Because of Adverse Impacts from Road Construction. This Reason for Withdrawal Violates the APA Because It Runs Counter to the Fact that the Exchange Agreement did not Authorize Road Construction.

The Supreme Court instructs that an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.* , 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

Contrary to the facts, including Secretary Bernhardt's multiple statements in his 2019 Decision that the Exchange Agreement did not authorize a road, Secretary Haaland's March 14, 2023, decision to "withdraw" is totally dependent upon the adverse impacts from road construction:

INTERVENOR DEFENDANTS-APPELLANTS' OPPOSITION
TO FEDERAL DEFENDANTS-APPELLANTS' MOTION TO DISMISS

a. Secretary Bernhardt did not consider the potentially significant restrictions on subsistence uses: a) from the failure of the 2019 Land Exchange Agreement to prohibit commercial use of the road, or to require barriers to be installed along the road; b) from allowing gravel mining for the road within the Refuge; c) from allowing twice as much land for the road as the 2013 proposal considered by Secretary Jewell; and d). from requiring less land coming to the Refuge than the 2013 proposal considered by Secretary Jewell.

b. The failure to evaluate the 2019 Agreement pursuant to NEPA. Regardless of whether further NEPA analysis was necessary as a matter of law, the changes between the potential land exchange considered in 2013 by Secretary Jewell and the land exchange authorized by the 2019 Land Exchange Agreement warranted further NEPA analysis and public comment as a matter of policy.

c. Secretary Haaland reweighed the many competing policy objectives involved with the 2019 Agreement based on the record before Secretary Bernhardt and reached a different policy judgment. For example, the Secretary placed a different weight on protection of subsistence resources than he had done.

(Motion to Dismiss at Pages 2 – 3).

Not only do these reasons violate the APA because they are contrary to the evidence, DOI *has known and has argued to this Court* as recently as December 13, 2022, that they are contrary to the evidence.

For example, in its March 3, 2020, Opening Brief to the three-judge panel of this Court DOI contradicted the reasons now given by DOI for its "withdrawal" (i.e., alleged adverse impacts from road construction) because they run counter to the facts:

9

Plaintiffs' claims largely relate to the use of the land for a prospective road that may or may not be built. Any such road will have to comply with all applicable federal and state laws and regulations before it could be built, and Plaintiffs' concerns about the existence of a road should be addressed at that time.[12]

DOI also contradicted its "road impacts" reasons now given for "withdrawal" in its

August 5, 2022, brief to this panel:

> Finally, the panel concluded that the land-exchange agreement here does not "authorize" a road or any other transportation system "in whole or in part," triggering Title XI. While it is true that Interior analyzed the benefits of a road as part of its determination to enter the exchange, a land exchange under Section 1302(h) does not "approve" or "grant" an "authorization" to any entity to do anything within the meaning of Title XI. Interior made clear that "any decision by [King Cove Corporation] to pursue a road connection is separate and distinct from the land exchange authorized here." 2 E.R. 230.[13]

Accordingly, DOI's March 14, 2023, decision to "withdraw" must be set

aside because "it offered an explanation for its decision that runs counter to the

evidence" and thus violates the APA 5 U.S.C. § 706(2). *County of Los Angeles v.*

*Leavitt,* 521 F.3d 1073, 1078 (9th Cir. 2008).


2. The Withdrawal Violates the APA Because DOI Has Not Provided a Reasoned Explanation for Its Change of Facts.

---

[12] Federal Defendants' Response to Plaintiffs' Motion for Summary Judgment. Case 3:19-cv-00216-JWS - Document 38 Filed 3-3-20 at Page 4.

[13] Federal Defendants' Response to Opposition to the Petition for Rehearing En Banc. Case: 20-35721, 8/5/2022, ID: 12510347, DktEntry: 103, at Page 16.

Under *FCC v. Fox Televisions, Inc.*, 556 U.S. 502, 515 (2009) and *Organized Village of Kake v. U.S. Dep't. of Agric.,*795 F.3d 956, 968-969 (9th Cir. 2015) DOI must provide a reasoned explanation for its change of position.

An *en banc* panel of this Court set aside in *Organized Village of Kake v. U.S. Dep't. of Agric.*,795 F.3d 956, 968-969 (9th Cir. 2015) where there was an unexplained change of facts similar to the situation at bar:

> [T]he 2003 ROD rests on the express finding that the Tongass Forest Plan poses only "minor" risks to roadless values; this is a direct, and entirely unexplained, contradiction of the Department's finding in the 2001 ROD that continued forest management under precisely the same plan was unacceptable because it posed a high risk to the "extraordinary ecological values of the Tongass." The Tongass Exemption thus plainly "rests upon factual findings that contradict those which underlay its prior policy." The Department was required to provide a "reasoned explanation ... for disregarding" the "facts and circumstances" that underlay its previous decision. It did not. Consistent with *Fox*, we have previously held that unexplained conflicting findings about the environmental impacts of a proposed agency action violate the APA. (Citations omitted.).

DOI's explanation for withdrawing from the Exchange Agreement violates the APA. How could DOI represent that there was no road impacting the environment as recently as December 13, 2022, but on March 14, 2023, withdraw from the Exchange Agreement due to impacts from road construction? This is the same " direct, and entirely unexplained, contradiction of the facts" in violation of the APA that caused this Court in *Kake* to set aside the Forest Service's exemption of the Tongass from the Roadless Rule.

3. DOI's Withdrawal from the Exchange Agreement Violates the APA Because DOI Violated Its Own Procedures for Consultation with ANCSA Corporation and Government to Government Consultation with Alaska Native Tribes.

DOI's consultation policy with ANCSA Corporations and government to government consultation with Alaska Native Tribes   is set out in Chapter 6.4 Part 512 of its Departmental Manual:

> 6.4 **Policy.** It is the policy of the Department to recognize and fulfill its legal obligations to consult with Alaska Native Corporations on the same basis as Indian Tribes under Executive Order 13175. All bureaus and offices shall make good-faith efforts to invite ANCSA Corporations to consult early in the planning process and throughout the decision-making process and engage in robust, interactive, pre-decisional, informative, and transparent consultation when planning actions with ANCSA Corporation implications (see 512 DM 7 for consultation process). It is the policy of DOI to seek consensus throughout the consultation process.

DOI's "withdrawal" from the Exchange clearly had   ANCSA Corporation implications.

DOI's consultation policy clearly required DOI to provide good faith notice and pre-decisional consultation seeking consensus with KCC and the Tribes before deciding to withdraw. Good faith would have required DOI to seek changes to the Exchange Agreement through pre-decisional consultation and the Exchange Agreement's amendment provision (Paragraph P. 2).

DOI's consultation policy was clearly not followed here. The Secretary gave KCC and the Agdaagux and Belkofski Tribes same day notice of DOI's decision to withdraw from the Exchange Agreement and to  switch sides ion the litigartion. The

Tribes request for consultation sent to the Secretary the day before Federal Defendant Appellants filed their Motion to Dismiss was not answered. (Trumble Declaration at ¶¶ 8 - 11, and 13).

DOI's abrupt "withdrawal" was in total disregard of its own above-stated policy and disrespected KCC and the Tribes. Given the Exchange Agreement's contractual nature, it was also a flagrant violation of the Exchange Agreement's implied duty of good faith and fair dealing. As such it violates the APA.

In *Morton v. Ruiz*, 415 U.S. 199 (1974) the Bureau of Indian Affairs discontinued benefits to Indians living near reservations without formally publishing eligibility requirements, as provided in a Bureau manual. Off-reservation Indians sued under federal Indian law statutes. The Supreme Court held that the agency's action violated both agency procedures and the government's duty to deal fairly with Indians, and therefore the action would not be granted deference.

In *Teton Historic Aviation Found. v. United States* , 248 F.Supp.3d 104, 111 (D.D.C. 2017) the Court stated: "[I]t is settled law that where an internal agency manual affects the concrete interest of a member of the public, the Court can, and should, require the agency to follow its own procedures by applying the manual itself as a judicially manageable standard."

13

Accordingly, DOI's same day "withdrawal" violates the APA because it was done in violation of DOI's consultation policy set out in Chapter 6.4 Part 512 of the Departmental Manual.

D. DOI Is Not Entitled to A Determination that this Case is Moot without Judicial Review of Its APA Violations.

Notwithstanding their arguments through March 14, 2013, defending the Exchange Agreement and defending Secretary Bernhardt's July 12, 2019, Decision before the district court, a three-judge panel of this Court, and to this *en banc* panel as recently as December 13, 2023, DOI now asks this Court to dismiss this case by claiming that their unilateral proclamation of "withdrawal" "ends the dispute between Friends and DOI and thus "there is no longer an agreement to be invalidated, vacated or set aside." (Motion to Dismiss at Page 1).

Because DOI's approval of the Exchange Agreement with KCC is the subject of Friends' Complaint, Friends have no reason to contest DOI's Motion to Dismiss. Indeed, vacation of the Exchange Agreement would be a windfall gift to Friends. DOI would prefer for this Court to proceed directly to DOI's argument that Friends' case is moot because the Exchange Agreement with KCC has been terminated. Doing so would avoid affording KCC a forum in which to contest the APA violations described above.

As the preceding sections of this brief show, KCC has a persuasive case against DOI's withdrawal. Accordingly, KCC respectfully requests this Court to adjudicate the lawfulness of the withdrawal before taking up DOI's Motion to Dismiss. Doing so is within the Court's discretion[14] and would be a logical way to proceed, because if KCC's opposition prevails, the Exchange Agreement continues, and Friends' case against DOI is not moot.

Alternatively, if the lawfulness of DOI's withdrawal cannot be decided by this panel, it should be remanded to district court and its Motion to Dismiss Stayed while the State and KCC oppose it on APA violation grounds in district court.

E. Alaska and KCC Have Standing to Continue the Defense of the Exchange Agreement Even Though DOI Has Changed Sides.

Even though DOI has now switched sides on the issues it had argued and submitted to this *en banc* panel in support of the Exchange Agreement on December 13, 2022, this Court's decision in *Organized Village of Kake v. U.S.D.A.*, 795 F.3d 956, 963-966 (9th Cir. 2015) allows Alaska and KCC to continue to defend the "Administrative Procedure Act" and "Purposes of the Alaska National Interest Lands Conservation Act" issues that are before this panel in place of DOI.

In *Kake* the Forest Service defended the 2003 ROD's exemption of the Tongass National Forest from the 2001 Roadless Rule in the district court but failed

[14] *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)

to appeal the district court's decision to vacate the 2003 ROD. Alaska, which was an Intervenor-Defendant in the case, appealed and prevailed before a three-judge panel of this Court. The State's right to appeal the case in lieu of the Forest Service was taken up by the *en banc* panel which reviewed the case.

The *Kake en banc* panel set out the test as follows at Page 963 of its Opinion:

> "[I]ntervenors are considered parties entitled ... to seek review," but "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III." … When the original defendant does not appeal, "the test is whether the intervenor's interests have been adversely affected by the judgment." *Didrickson v. U.S. Dep't* of Interior, 982 F.2d 1332, 1338 (9th Cir.1992).

The *Kake en banc* panel determined at pages 964-965 of its Opinion that Alaska met the test that its "interests ha[d] been adversely affected" and that it also had Article III standing.

The State has made a similarly strong showing of Article III standing in this case.[15]  Arguments to the contrary were not raised by or  in the district court or by or in in the appeal to the three-judge panel of the Ninth Circuit or by or to this panel.

Does it make a difference that unlike the situation in *Kake*, in which the Forest Service failed to appeal,  DOI has switched sides and remains in this case? No. Just

---

[15] State's Opening Brief to three-judge panel , Case 20-35721,  filed 11-23-2020, ID: 11904326, Dkt. Entry 17 at Pages 2-6.

16

as in *Kake*, the test for continuing the defense of the issues before this panel is not *why* the federal agency is not participating in the defense. (The *Kake en banc* panel did not ask why, or read anything into the fact that, the USDA did not appeal the district court decision). Rather, the *Kake* Court only asked whether Alaska, the remaining defendant, had Article III standing and its interests had been adversely affected.

Accordingly, this panel continues to have the jurisdiction to decide the issues before it.

F. This Court Should Not Order Vacatur.

Vacatur would unnecessarily require KCC and Alaska to file a new complaint contesting DOI's breach of the Exchange Agreement in district court. That would cost KCC and Alaska money and cost the Alaska district court system use of its judicial resources. It would only delay the review which could more easily be decided by this panel or the district court on remand. Moreover, as the district court for the District of Alaska pointed out in *N. Alaska Envtl. Ctr. v. Haaland*,[16] vacatur could require this panel to first reach a decision on the merits of DOI's withdrawal in any event. *Louisiana v. Am. Rivers*, 142 S.Ct. 1347, 1347 (2022)

---

[16] 3:20-cv-00187 SLG (D. Alaska May 15, 2022) at page 8.

DOI has taken no position on vacatur, so it has not claimed that it would be prejudiced by remand without vacatur. (Motion to Dismiss page 15).

### G. Conclusion

KCC respectfully requests this Court to adjudicate the above APA violations associated with DOI's withdrawal from the Exchange Agreement before taking up DOI's Motion to Dismiss. A judicial finding by this Court (or on remand) that DOI breached the Exchange Agreement would restore the Exchange Agreement and thereby defeat DOIs' Motion to Dismiss. Because effective judicial relief remains available to KCC and Alaska to set aside the withdrawal if this Court will adjudicate the withdrawal issue first, this case is not moot.[17]

## II. DOI'S PURPORTED "WITHDRAWAL" DOES NOT RENDER THIS CASE MOOT.

### A. Introduction.

If the Court nevertheless determines that the case is moot, it should find that it falls within both the "capable of repetition, yet evading review" and "voluntary cessation" exceptions to the mootness doctrine.

---

[17] "'The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot.'" *Serv. Emps. Int'lUnion v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1068 (9th Cir. 2010) (quoting *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986))." *Vasquez v. Wolf,* No. 20-55142, at *2 (9th Cir. Dec. 4, 2020).

B. The "Capable of Repetition Yet Evading Review" Exception Applies to this Case.

DOI explains that: "To show that the challenge falls within this narrow exception to the mootness doctrine, the party asserting that the exception applies has the burden of establishing that "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." (Federal-Defendants Appellants' Motion to Dismiss at page 7.). *Protectmarraige.com-yes on 8 v. Bowen* 752 F.3d. 827, 836-837 (9th Cir. 2014).

DOI's Motion fails to properly analyze how each prong of this test applies to this Exchange Agreement. DOI claims that because a land exchange agreement under ANILCA is not of limited duration and because this Exchange Agreement was not set to expire until 2027, it was not of limited duration.

This analysis ignores the maxim of blackletter law that every parcel of land is considered unique. *In re Arnold Baker Farms* 85 F.3d 1415 (9th Cir. 1996). It follows that each land exchange agreement conveying such land is also unique. DOI's Motion admits that KCC will not receive the same land exchange again: "[T]here is no immediate threat that Interior will re-enter a new land exchange agreement, much less one on materially the same terms as the 2019 Agreement. (DOI's Motion, page 7). So, KCC's unique Land Exchange will be gone forever if DOI's attempt to cause it to become moot by withdrawal succeeds. Because the

withdrawal has already occurred, it is beyond argument that "the duration of the challenged action is too short to allow full litigation before" the withdrawal occurs.

Moreover, once DOI stopped defending the Exchange Agreement to join Friends and withdraw from the Exchange Agreement the case became "inherently of limited duration" and destined to "almost certainly run its course before full litigation can be completed." DOI's obvious purpose in abandoning its defense of the Exchange Agreement was to moot Friends' complaint by ridding itself of the Exchange Agreement.

DOI's assertion regarding the second prong of the test - i.e., that "there is no reasonable expectation or demonstrated probability of the same controversy recurring," – is also incorrect. (DOI's Motion, page 10). While any potential future agreement would not be on the same record or on the same terms, the APA and ANILCA issues currently before this panel would arise again.

DOI argues that "The content of the Secretary's decision memorandum also indicates that the Secretary's "withdrawal" from the 2019 Agreement is "entrenched" and "permanent." (DOI's Motion, page 13). But while the Secretary may not renew the same agreement, she has already contradicted DOI's implication that the same issues currently before this panel will not arise again.

As the Declaration of Della Trumble, the CEO of KCC, avers - in answer to a question on the March 14, 2023, virtual call with Ms. Trumble and other key KCC

and DOI people, the Secretary said, "she supported a road from King Cove to Cold Bay." (Trumble Declaration at ¶ 8.C). At a Senate hearing before the Senate Appropriations Committee on the Interior Department budget on March 29, 2023, Senator Lisa Murkowski questioned the Secretary about her position on the road. Secretary Haaland responded that she is "committed" to a "viable" solution for King Cove. (Trumble Declaration at ¶ 16). DOI itself admits "that a future agreement may materialize." (DOI's Motion, page 14).

As the long course of King Cove litigation has repeatedly shown, even a simple land exchange without a road will be challenged by environmental groups. Any effort by Secretary Haaland to authorize a road or any other "viable" solution acceptable to King Cove would raise "a sufficient likelihood of recurrence." For this reason, DOI's unsupported assurance that "Even assuming, however, that a future agreement may materialize, the 2019 Agreement and the legal violations Plaintiffs alleged it to contain cannot "reasonably be expected" to recur" is without foundation and elevates hope over experience. (DOI's Motion, pages 14-15).

A. The "Voluntary Cessation" Exception Applies.

Voluntary cessation occurs when a party attempts to make a case moot by simply ending the challenged conduct and then resumes it once the threat of the

21

ongoing litigation has passed. (See cases cited in DOI's Motion, at pages 11-12). That is what is happening here.

Although DOI's "withdrawal" may impact this Exchange Agreement, the issues before this panel will recur. Secretary Haaland made it clear that the conduct Friends challenged (a road and/or a land exchange) would be resumed when she told the King Cove leadership on March 14, 2023, that she supports a road (Trumble Declaration at ¶ 8.C) and subsequently told Senator Murkowski at a Senate Energy Committee hearing on March 29, 2023, that she is "committed" to a "viable" solution for King Cove." (Trumble Declaration at ¶ 16).

The "Voluntary Cessation" Exception Applies because the Secretary has pledged to King Cove leadership and Senator Murkowski to resume the conduct of which Friends originally complained "once the threat of the ongoing litigation has passed." *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1095 (9th Cir. 2003)

Finally, should DOI get away with switching sides to moot the Land Exchange in this case in such an obvious way, it will almost certainly repeat the maneuver whenever a Departmental Secretary decides to terminate an agreement that her predecessor had entered in order to avoid judicial review of her/his action. Accordingly, it is in the public interest to find that the "Voluntary Cessation" exception applies to the facts of this case.

D. Conclusion.

KCC respectfully requests that this panel publish an Opinion on the issues now before it and either deny DOI's Motion to Dismiss or remand it to the district court for further action.

**RESPECTFULLY SUBMITTED** this 26th day of April 2023.

/s/ Steven W. Silver                            /s/ James F. Clark
Steven W. Silver                                   James F. Clark
Alaska Bar No. 7606089                      Alaska Bar No. 6907025
Robertson, Monagle, and Eastaugh, PC    Law Offices of James F. Clark
2104 Polo Pointe Dr.                           1109 C Street
Vienna, VA 20191                               Juneau, Alaska 99801
703. 587-7792(cell)                            907.586.0122 (office)
Ssilver628@aol.com                            907.586.1035 (fax)
ssilver628@aol.com                            jfclarkiii@gmail.com

*Attorneys for King Cove Corporation. et al.* Intervenor Defendants-Appellants

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit in Federal Rule of Appellate Procedure 27(d)(2)(A), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 27(a)(2)(B), this document contains 5192 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ Steven W. Silver
Steven W. Silver
Alaska Bar No. 7606089
Robertson, Monagle, and Eastaugh, PC
2104 Polo Pointe Dr.
Vienna, VA 20191
703. 587-7792(cell)
ssilver628@aol.com

/s/ James F. Clark
James F. Clark
Alaska Bar No. 6907025
Law Offices of James F. Clark
1109 C Street
Juneau, Alaska 99801
907.586.0122 (office)
jfclarkiii@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April 2023, I caused to be electronically filed the foregoing Defendant-Intervenor-Appellants' KCC'S Brief Opposing Federal Defendants-Appellants' Motion to Dismiss with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Steven W. Silver
Steven W. Silver
Alaska Bar No. 7606089
Robertson, Monagle, and Eastaugh, PC
2104 Polo Pointe Dr.
Vienna, VA 20191
703. 587-7792(cell)
ssilver628@aol.com

/s/ James F. Clark
James F. Clark
Alaska Bar No. 6907025
Law Offices of James F. Clark
1109 C Street
Juneau, Alaska 99801
907.586.0122 (office)
jfclarkiii@gmail.com